MAY-23-1997 14:2    STMS PACKAGING                    205 254 4251    P.15/17

*1235949*

Page 1 of 10

MS-MH-1 FIXED-3/96

## INSTALLMENT NOTE, SECURITY AGREEMENT AND DISCLOSURE STATEMENT

Date: June 18, 19 97

Debtor:
L V WHITEHEAD
Name of Buyer
JOYCE WHITEHEAD
Name of Co-Buyer
1372082 OLD PANOLA ROAD
Residence Address
COMO,    PANOLA    MS    38619
City    County    State    Zip

Secured Party:
HOLLOWAY HOMES, INC
Seller, the creditor making the disclosures in this transaction

P.O. BOX 544
Address
SENETOBIA    MS    38668
City    County    State    Zip

| ANNUAL PERCENTAGE RATE  The cost of your credit as a yearly rate. | FINANCE CHARGE  The dollar amount the credit will cost you. | Amount Financed  The amount of credit provided to you or on your behalf. | Total of Payments  The amount you will have paid after you have made all payments as scheduled. | Total Sale Price  The total cost of your purchase on credit, including your downpayment of $ 5747.83 |
|---|---|---|---|---|
| 10.50 % | $ 118485.60 | $ 51672.00 | $ 170157.60 | $ 175905.43 |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 360 | 472.66 | Monthly, Beginning ~~July 1, 1997~~ 8-1-97 |

You may obtain property insurance from anyone that is acceptable to HOLLOWAY HOMES, INC
If you get the insurance from HOLLOWAY HOMES, INC _____, you will pay:
  Property Insurance:  $ 696.00  for 12  months coverage.
  Flood Insurance:     $ 0.00    for 00  months coverage.

**Security:** You are giving a security interest in:
  [X] the goods or property being purchased.
  [ ] (brief description of other property) _____

Title Fee and/or Recording Fee: $ 14.00
**Late Charge:** If a payment is more than 15 days late, you will be charged the greater of $5 or 4% of the amount that is late, but not more than $50.

**Prepayment:** If you pay off early, you will not have to pay a penalty.

**Assumption:** Someone buying your home may, subject to conditions, be allowed to assume the remainder of the obligation on the original terms.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

COPY

*1235949*

©SouthTrust Mobile Services, Inc, 1985, 1995

Exhibit E

MAY-23-1997  14:21       STMS PACKAGING                    205 254 4251    P.16/17

Page 2 of 10

**Itemization of Amount Financed**

1. Cash price composed of:
   a. manufactured home, furniture,
      appliances, etc. .................... $ 54995.00
   b. state and local sales taxes.......... $  1699.83
   Total cash price (a + b) ........ [A] $ 56694.83
2. Downpayment, consisting of:
   c. net trade-in allowance ............ $  5000.00
   74   TOWN & COUNTRY   14X70
   year      make         model
   d. cash downpayment ................ $   747.83
   Total downpayment (c + d) ...... [B] $  5747.83
3. Amount paid on your Account ([A]-[B])[C] $ 50947.00

4. Amounts paid to others on your behalf
   a. to public officials for certificate
      of title fee ....................... $     0.00
   b. to public officials for recording
      fees and taxes.................... $    14.00
   c. to appraisers ..................... $     0.00
   d. to flood certification
      services ......................... $     0.00
   e. to insurance companies ..... $   696.00
   f. to AMERICAN FLD SV          $    15.00
   g. to _____    $     0.00
   Total (a+b+c+d+e+f+g) .. [D] $   725.00
5. Prepaid finance charge ..... [E] $     0.00
6. Amount Financed ([C] + [D]-[E]) $ 51672.00

---

1. **Meaning of Terms; Parties.** As used herein, except where the context clearly requires a different meaning, the words **you** and **your** mean the Buyer identified above, and if there is more than one Buyer, they mean each of the Buyers and also all of them, jointly and severally; **Seller** means the Seller identified above; **STMS** means SouthTrust Mobile Services, Inc., its successors and assigns; **we**, **our** and **us** mean the Seller and also any party, such as STMS, to whom this Note may be assigned; **Manufactured Home** means the manufactured home described in Paragraph 5 of this Note; **Homesite** means the Buyer's residence address described above upon which the Manufactured Home will be placed; and this **Note** means this Installment Note, Security Agreement and Disclosure Statement. This Note evidences the obligation of Buyer arising out of a credit sale of the Manufactured Home to Buyer by Seller.

2. **Payment Schedule.** You promise to pay to us the principal sum of _____
   Fifty One Thousand Six Hundred Seventy Two and 00/100          Dollars ($  51672.00  ),
   together with interest thereon at the rate of 10.50 % per annum
   ☐ from the date of this Note
   ☒ from June 1 , 19 97
   until this Note is paid in full, in 360 monthly payments of $ 472.66 each. The first payment is due on July 1 , 19 97 , and another payment is due on the same day of each month thereafter until the principal sum and the interest thereon are paid in full.

3. **Payment by Check.** If you pay us by check, the payment will be provisionally credited until your check is finally paid. If your check is not paid on first presentment to your bank, we may reverse the provisional credit as of the date it was entered, and if we are charged a fee or service charge as a result of the return of such check, then you agree to pay to us the amount of such charge, not to exceed $15.00 or such lesser amount as may be permitted by applicable law.

4. **Late Charge; Interest After Maturity.** If any payment is more than 15 days late, you agree to pay a Late Charge equal to the greater of $5 or 4% of the amount that is late, but not more than $50. We will not collect more than one Late Charge on each payment which is late, and we will not collect a Late Charge on the final payment if we collect interest after maturity. You agree to pay interest on the unpaid balance of this Note after final maturity, whether by acceleration or otherwise, at the rate set forth in Paragraph 2 hereof.

5. **Security Interest.** To secure the payment and performance of all of your obligations under this Note, you hereby grant to us a security interest in the property described below, and all accessions at any time hereafter installed in or affixed to that property. (All of the property, and accessions just described and described below are sometimes referred to in this Contract as the "Collateral"):

MAY-23-1997  14:26          STMS PACKAGING                    205 254 4251   P.17/17

Page 3 of 10

| Description of Collateral | Year | New or Used | Make | Model | Width and Length* | Serial No. | Primary Use of Collateral |
|---|---|---|---|---|---|---|---|
| Manufactured Home | 1997 | N | REDMAN | BRIGHTON-LE | 28X80 *may include hitch and overhang | 14719008A 14719008B | Personal |

Equipped with: ☐ furniture  ☒ refrigerator  ☒ range  ☒ dishwasher  ☒ clothes washer  ☒ clothes dryer
☒ air conditioning  ☐ skirting  ☐ other: _____

Other collateral:

Our security interest also covers all proceeds of the Collateral, including the proceeds of all insurance on the Collateral, whether or not we are named as loss payee or mortgagee under the policy. You hereby assign to us all rebates of unearned premiums on all property and casualty insurance you may have on the Collateral at any time. You agree that if you are in default under this Note we may, at our election, cancel any such insurance, receive and endorse in your name any checks or drafts representing premium rebates, and apply such premium rebates as a credit against your obligations under this Note. To the extent that any property which otherwise would be a part of the Collateral constitutes "household goods" as that term is defined in 12 C.F.R. Section 227.12(d), and to the extent that the extension of credit evidenced by this Note was not used to purchase such property, such "household goods" do not constitute any part of the Collateral for this Note.

6. **Waiver of Warranties.** To the extent permitted by law, YOU HEREBY WAIVE, AND WE DISCLAIM, ALL WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO THE COLLATERAL, INCLUDING IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. You do not by this Note waive (a) the express written warranties, if any, given to you by the manufacturer(s) of the Collateral or any part of the Collateral, or (b) the express warranties, if any, given to you by the Seller. If you purchase a service contract on the Collateral or any part of the Collateral on, or within 90 days after, the date you purchase the covered Collateral, your waiver of implied warranties will not apply to the Collateral covered by the service contract. The duration of any implied warranties may be limited by the terms of the express written warranty or service contract.

7. **Default; Entire Balance Due.** You will be in default under this Note and, after we provide you with any notices or opportunities to cure as may be required by federal or state law, we can, at our option, require that you pay to us at once the entire unpaid principal balance, all accrued but unpaid interest, and all other charges, if any, then owed under this Note, with or without further notice to or demand upon you: (a) if you fail to make any payment under this Note or under any other agreement you have with us exactly when it is due; (b) if you fail to keep the Collateral insured as required in Paragraph 13; (c) if you break any of the other agreements you have made in this Note or if any warranty or statement you have made in this Note is not true; (d) if you or any guarantor of this Note dies, or becomes insolvent, or files a petition for relief under any chapter of the Bankruptcy Code; (e) if a judgement is entered against you or any guarantor of this Note in any court, if a tax lien is filed against you or any guarantor, or if a garnishment, execution, attachment, tax levy, writ of seizure, confiscation of property, forfeiture, or similar process or proceeding is issued or commenced with respect to any of your property or the property of any guarantor; (f) if a criminal proceeding is commenced against you or any guarantor of this Note; or (g) if anything else happens which we reasonably feel endangers any collateral for this Note or impairs your ability to pay us. Time is of the essence of each of your promises and obligations to pay or perform under this Note.

8. **Collection Costs and Attorneys' Fees.** You agree to pay all costs we incur in collecting this Note, including reasonable attorneys' fees if we refer this Note to an attorney who is not our salaried employee for collection.

9. **Waiver of Demand and Presentment; Waiver of Exemptions.** You agree that you will do everything you have agreed to do under this Note without requiring that we ask you to do it and without requiring that we first present this Note to you. To the extent permitted by law, you hereby waive as to this Note and all your obligations to us hereunder, but solely as regards the Collateral, all exemptions from attachment, execution, levy, sale or other process for the collection of this debt; provided, however, that no consumer protection provision of any applicable law and no limitation on garnishments under federal or state law is waived hereby.

TOTAL P.17

10. **Change of Mailing Address.** You agree to send us written notification of any change in either your mailing address or your residence address not later than 10 days after the change of address is effective.

11. **Our Rights Are Cumulative Waivers; Extensions.** You agree that our rights under this Note, under any other agreements we may have with you, and under applicable law are cumulative, and that we will not by any act, delay, omission, or otherwise be deemed to have waived any of our rights or remedies under this Note or under any other agreement or under applicable law unless the waiver is in writing and signed by us. We may accept late payments and partial payments and may delay in enforcing our rights without losing any of our rights. We may take any additional collateral for, or release any Collateral for, or fail to perfect our security interest in any Collateral for, this Note, and we may grant extensions, renewals or indulgences to you or to any other party obligated to pay this Note, all without releasing or in any way affecting your obligations under this Note. You and any other party obligated to pay this Note hereby waive defenses based on suretyship or impairment of collateral.

12. **Miscellaneous.** This note shall be governed, construed, and enforced in accordance with the laws of the United States (including the Federal Arbitration Act, 9 U.S.C. § 1 *et. seq.*) and to the extent not inconsistent therewith, the laws of the state of Mississippi, without giving effect to its principles of conflict of laws. If any provision of this Note is unlawful or unenforceable, or if any provision of this Note does not comply with any applicable state or federal laws or regulations, each such provision shall be without force and effect without thereby affecting any other provision hereof. No provision of this Note is intended to require the payment of interest or finance charges in excess of the maximum permitted by law. If any court determines that any interest or finance charge in excess of the maximum permitted by law is provided for in this Note, the provisions of this Paragraph will govern, and you will not be obligated to pay the amount of such interest or finance charge to the extent that it is in excess of the maximum interest or finance charge permitted by law. This Note is binding upon you and your heirs, administrators, executors and assigns. The paragraph headings in this Note are for convenience only; they do not form a part of this Note and do not add to or subtract from the provisions of this Note.

13. **Insurance.** You agree to keep the Collateral insured at all times against loss or damage (including flood insurance, if we require it) in an amount not less than the full insurable value of the Collateral or the unpaid balance owed under this Note, whichever is less, or in such other amount as is required by law, under a policy naming us as mortgagee or loss payee and providing for payment directly to us in the event of loss or damage to the Collateral. YOU MAY CHOOSE THE PERSON THROUGH WHICH PROPERTY DAMAGE INSURANCE IS OBTAINED. YOU HAVE THE OPTION OF PROVIDING SUCH INSURANCE THROUGH AN EXISTING POLICY OR A POLICY INDEPENDENTLY OBTAINED AND PAID FOR BY YOU. If the property insurance disclosure in the disclosure statement on page 1 of this Note indicates that property insurance may be purchased through us, you may, at your election, purchase the insurance through us for the cost shown. Whether the insurance is provided by you or through us, you agree to pay all premiums for the insurance when the premiums are due. If you provide the property damage insurance, you agree to deliver the insurance policy to us as additional collateral and to provide us with the receipts showing payment of premiums. If you do not obtain the required property damage insurance or do not pay the premiums, we may do so for you if permitted by law, or, upon not less than 10 days written notice to you (or such longer notice period as may be required by applicable law with respect to any type of insurance) of the cancellation or other lack of dual interest insurance coverage, we may purchase property damage insurance covering only our interest in the Collateral, all as provided in Paragraph 14, and you agree to reimburse us for all premiums that we pay and all insurance that we purchase as provided therein, to the extent permitted by law. You acknowledge and agree that we are not required and will not be obligated to pay any premiums or purchase any insurance, but that we may do so, or refuse to do so, in our sole discretion. UNLESS CHECKED HERE ☐ LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN ANY INSURANCE YOU PURCHASE THROUGH US.

14. **Your Failure to Maintain Insurance.** If you fail to keep in force the property damage insurance required by this Note, we may purchase the insurance if permitted by law, or, upon not less than 10 days written notice to you (or such longer notice period as may be required by applicable law with respect to any type of insurance) of the cancellation or other lack of dual interest insurance coverage, we may purchase property damage insurance covering only our interest in the Collateral in a form as we deem appropriate and from agents and companies solely of our choosing. If we purchase property damage insurance or pay the premiums, we will notify you of the amount of the premium, and you agree to pay us the amount of the premium within 10 days. If you do not pay us within 10 days, we may, at our election, permit you to pay such amount, with interest, in monthly installments for a term not

exceeding the term of the insurance policy purchased. You agree to pay interest on the amount we have paid for the insurance at the interest rate set forth in Paragraph 2 of this Note, or the maximum rate allowed by law, whichever is less, and to pay such amount plus interest in equal monthly installments, along with and in addition to the other payments shown in the payment schedule in Paragraph 2, over the remaining term of the insurance policy purchased. You agree that any amounts paid by us, and the interest thereon, will be secured by our security interest in the Collateral. Any insurance required by this Note which we purchase due to your failure to do so may be discontinued at any time in our sole discretion. We may, at any time, in our sole discretion and without notice to you, elect not to purchase any insurance, and elect not to renew any insurance previously purchased by us. In any event, we will not purchase any insurance on your behalf, and we will not renew on your behalf any insurance previously purchased by us, if the remaining term of this Note is twelve months or less or if the outstanding balance of this Note is $1,000 or less. If we purchase insurance, including insurance insuring only our interest in the Collateral (this insurance is called "single interest insurance"), we will be acting solely on our own behalf and neither we nor the insurance agent will be acting as your broker. We may purchase the insurance through an insurance agency affiliated with us through common ownership or otherwise. If permitted by law, the agency which places the insurance may receive a commission on the purchase of insurance. Single interest insurance does not provide coverage for your interest in the Collateral and it may pay certain claims only if we have repossessed the Collateral after you default. Single interest insurance is often more expensive than a policy purchased by the owner of the insured property. IF A SINGLE INTEREST INSURANCE POLICY IS ISSUED, IT WILL NOT PROVIDE PROTECTION AGAINST LIABILITY FOR BODILY INJURY OR DAMAGE TO PROPERTY OF OTHERS.

15. **Cancellation of Insurance After Default.** You agree that if you are in default under this Note, we are authorized to cancel any insurance coverage on the Collateral, to receive and give receipt for any returned premiums on such insurance, to endorse in your name any check or draft for those returned premiums, and to apply those returned premiums as a credit against your obligations under this Note.

16. **Loss or Damage to Collateral.** You agree that you will bear at all times the risk of loss or damage to the Collateral, including loss by theft or destruction. Your obligations under this Note will not be released or discharged as a result of any such loss or damage. In the event any part of the Collateral is lost or damaged, you agree to send to us written notice of such loss or damage, and of the extent thereof, not later than 10 days after it occurs. We may, at our election, use the insurance proceeds paid as a result of any loss or damage to the Collateral to repair or replace the Collateral or we may apply such proceeds as a credit against your obligations under this Note. You hereby appoint us as your attorney-in-fact to file claims under any policy of insurance covering the Collateral (but we will not be obligated to file any such claim) and to endorse in your name any check or draft representing proceeds of any insurance on the Collateral. In the event of a dispute with any insurance carrier regarding coverage or the amount to be paid on account of any loss or damage, we may bring an action or join in any action against the insurance carrier, at our election. If we elect not to bring or join in any such action and you elect to pursue any claim or action against the insurance company, you agree to do so solely at your expense, and you waive any right to require us to join in the claim or action and any right to charge us with any part of the expenses of the claim or action even if we benefit from it.

17. **Location, Transfer, and Repair of Collateral.** You agree not to move the Manufactured Home without first obtaining our advance written consent. You agree to notify us of any change in the location where any of the other Collateral is kept not later than 10 days after such change of location occurs. You agree not to give, sell, lease, rent or transfer the Collateral to any other person or entity or permit the Collateral to remain in the possession of any other person or entity for a period of 10 days or more without our advance written consent. You agree not to grant a security interest in the Collateral to any other person or entity. You agree to keep the Collateral in good order and repair, and not to abuse, waste or destroy the Collateral. If you attempt to sell, lease, rent or transfer all or any part of the Collateral to any other person or entity or if you fail to comply with any other provision of this Note without our advance written consent, you will be in default under Paragraph 7(c) of this Note and, after we provide you with any notices or opportunities to cure as may be required by federal or state law, we can, at our option, require that you pay to us at once the entire unpaid principal balance, all accrued but unpaid interest, and all other charges, if any, then owed under this Note, with or without further notice to or demand upon you.

18. **Use of Collateral.** You warrant to us that your primary intended use of the Collateral is shown in Paragraph 5 of this Note. You agree not to use the Collateral in violation of any statute or ordinance or of any policy of insurance covering the Collateral. You agree to comply with the terms of any lease or agreement covering the

premises where the Collateral is kept ██████, and to pay when due all charges ██████ase of those premises or for the storage of the Collateral. If you fail to pay any such rent or storage charges when due, we may pay those charges (but we will not be obligated to pay any such charge), and you agree to reimburse us the amount of those charges upon our request. Such charges will bear interest at the rate set forth in Paragraph 2 hereof. You agree that any such charge paid by us and the interest thereon will be secured by our security interest in the Collateral.

19. **Discharge of Liens on Collateral.** You agree to pay when due all taxes, assessments, charges, liens and encumbrances at any time levied or placed on the Collateral. If you fail to pay any such charge promptly when due, we may pay such charge (but we will not be obligated to pay any such charge), and you agree to reimburse us the amount of those charges upon our request. Such charges will bear interest at the rate set forth in Paragraph 2 hereof. You agree that any such charges paid by us, and the interest thereon, will be secured by our security interest in the Collateral.

20. **Removal of Non-collateral Personal Property.** If you are in default under this Note, you agree immediately to remove from the Manufactured Home all of your personal property which is not part of the Collateral. If you fail to remove your personal property from the Manufactured Home and we repossess the Manufactured Home and your personal property which is in it or on it, you will not hold us responsible in any way for taking your personal property, and we may hold your personal property until you come to claim it. We will not be obligated to hold such property for you or to return it to you or to compensate you for it in any way unless you notify us of your claim that we have taken personal property which is not a part of the Collateral and furnish a list of the property taken within 48 hours after we take possession of the property. Our obligation to compensate you in any event will be limited to the fair rental value of the non-Collateral personal property while it was in our possession. You agree to pay any reasonable costs we incur in storing your personal property after we take possession of it. Such charges will be secured by our security interest in the Collateral.

21. **Entry of Premises Where Collateral Located.** You hereby grant to us and our agents an irrevocable license, coupled with our interest in the Collateral, to come upon any premises where the Collateral is located, whether during daylight or at night and whether the premises are fenced or posted, to inspect the Collateral and, if you are in default under this Note, to repossess the Collateral. You agree that our entry upon such premises or the Collateral for these purposes will not be a trespass and that our repossession of the Collateral after default will not be a trespass to, or a conversion of, the Collateral. If we should repossess the Collateral or any part of it when you are not in default, you agree that our liability to you will be limited solely to the fair rental value of such Collateral while it was in our possession.

22. **Repossession and Sale of Collateral.** If you are in default under this Note, we have the right to repossess the Collateral and to sell, lease or otherwise dispose of it in a commercially reasonable manner at a public or private proceeding. After subtracting from the proceeds of the sale or other disposition of the Collateral the costs (including attorneys' fees as provided in Paragraph 8) incurred by us in repossessing the Collateral, repairing it, storing it, preparing it for sale, advertising the sale, and conducting the sale, we will apply the balance of the proceeds of the sale or other disposition of the Collateral as a credit against the amount you owe us under this Note. Any amount by which the proceeds of the Collateral exceeds the amount you owe us under this Note and under any other agreement you have with us which is secured by the Collateral will be paid to you or to the person then entitled to receive such amount by applicable law or agreement. You will remain obligated to us for any deficiency between the balance of the proceeds of the Collateral and the amount you owe us under this Note. You will be entitled to recover the Collateral at any time before we sell it or otherwise dispose of it by paying to us the full amount then past due under this Note and any other agreement we have with you which is secured by the Collateral and which is in default, plus all expenses, including reasonable attorneys' fees to the extent permitted by law, we have incurred in repossessing the Collateral, preparing it for sale, storing it, and preparing for the sale.

23. **Notice of Foreclosure Sale.** To the extent that we are required to give you notice of any sale or other disposition of the Collateral after default you agree that the requirement of reasonable notice will be met if we mail or deliver the notice to you at your address shown on this Note or such other address as you may have furnished us in writing for that purpose, not later than 10 days before the time of such sale or other disposition of the Collateral. If you move and fail to furnish us written notice of your address change, then you assume responsibility for ensuring that any notice sent to your address shown on this Note is forwarded to your new address.

Page 7 of 10

24. **Continued Perfection of Security**... **t.** You will furnish to us such ad... information and will execute and deliver to us such financing statements, title documents, and other papers, and will do all other acts and things which we may from time to time reasonably request, in order to perfect and continue perfected our security interest in the Collateral, and to continue our security interest as a first lien on the Collateral. You agree that we may record or file a carbon, photostatic or other copy of this Note as a financing statement in any public office we deem necessary or appropriate, and such copy shall have the same effect as if the original signed copy hereof had been recorded or filed.

25. **Assignment of Note to STMS.** You acknowledge and understand that Seller intends to assign this Note to SouthTrust Mobile Services, Inc. ("STMS"), P.O. Box 2465, 112 North 20th Street, Birmingham, Alabama 35201-2465. You acknowledge further that Seller and STMS are separate and wholly independent entities, that Seller is not an agent or representative of STMS for any purpose, that STMS has no right of control over Seller, and that Seller has no right or authority to represent, warrant, speak for, or bind STMS in any way. You acknowledge that you have not relied on any such representation, warranty, or statement in entering into this Note, and you agree that if STMS approves your credit and accepts the assignment, after you receive notice of the assignment you will make your payments under this Note directly to STMS.

26. **Consent to Disclosure.** From time to time, we may become aware of goods or services which may be of interest to you as the owner of the Manufactured Home. You hereby consent that we may furnish your name, address, type of mobile home, and status of property insurance to providers of such goods and services. If those providers should contact you, they will not be acting on our behalf, and you will have absolutely no obligation to purchase anything from them.

27. **Arbitration Agreement and Jury Trial Waiver.** Any controversy or claim arising out of or in any way related to this Note, or any default hereunder, or the purchase, sale, delivery, set-up, quality, or financing of the Manufactured Home or any related furniture, appliance, or other property, product or service, whether based on contract, an alleged tort, or other legal theory, shall be resolved by **BINDING ARBITRATION** administered by the American Arbitration Association ("AAA") under its Commercial Financial Disputes Arbitration Rules. The arbitration shall be conducted in the town or city of the Seller's address shown on page 1 of this Note or in any other location not more than 50 miles from that town or city. Judgment on the arbitration award may be entered in any court having jurisdiction. Any question whether a particular controversy or claim is subject to arbitration shall be decided by the arbitrator.

All statutes of limitation which otherwise would apply to an action brought in a court of competent jurisdiction on the controversy or claim will be applicable in the arbitration proceeding. The receipt by the AAA of a written demand for arbitration will be deemed the commencement of an action for such purpose.

Nothing in this Paragraph 27, and no exercise of any right of arbitration hereunder, shall limit the right of you or us (a) to foreclose against any real or personal property collateral by the exercise of any power of sale under this Note, or under any deed of trust, mortgage, or other security agreement or instrument, or under applicable law, (b) to exercise self-help remedies such as setoff or repossession, or (c) to obtain provisional or ancillary remedies such as pre-judgment seizure of property, detinue, replevin, or injunctive relief, or to seek or obtain any other traditional equitable relief which does not claim money damages from a court having jurisdiction, whether done before, during or after the pendency of any arbitration proceeding. The institution and maintenance by you or us of any action for judicial relief, or pursuit of provisional or ancillary remedies, or exercise of self-help remedies, shall not constitute a waiver of the right to submit any controversy or claim to arbitration, including any counterclaim asserted in any such judicial action, and including those controversies or claims arising from exercise of any such judicial relief, or pursuit of provisional or ancillary remedies, or exercise of self-help remedies. If a demand for arbitration of any counterclaim is made, the entire controversy or claim shall be submitted to binding arbitration pursuant to this Paragraph.

In any arbitration hereunder, the arbitrator shall decide (by documents only or with a hearing, at the arbitrator's discretion) any pre-hearing motions which are substantially similar to motions to dismiss for failure to state a claim or motions for summary judgment.

The arbitrator may, in his or her discretion, award to the prevailing party, if any, determined by the arbitrator, all pre- and post-award expenses of the arbitration, including the arbitrator's fees and travel expenses, administrative fees, out-of-pocket expenses such as copying and telephone, court costs, witness fees, and (if allowed by applicable law or agreement) attorneys' fees. Otherwise, the parties shall share equally the arbitrator's fee and travel expenses and administrative fees, and each party shall bear its own expenses.

You and we hereby WAIVE THE RIGHT TO TRIAL BY JURY of all controversies and claims described in the first sentence of this Paragraph 27, whether the controversy or claim is submitted to arbitration or is tried by a court.

| Please read Paragraph 27 and initial here (all signers must initial) |
|---|
| (x) _LVW_   (x) _JW_   _____   _____ |
| Buyer       Buyer       Guarantor   Guarantor |

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

### NOTICE TO THE BUYER

**DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGNED.**

By signing below you agree to all of the terms and conditions of this Note including, but not limited to, the Arbitration Agreement and Jury Trial Waiver in Paragraph 27, and you acknowledge that you have received a completed copy of this Note.

Seller agrees to the terms of the foregoing Note made by Buyer and hereby assigns the foregoing Note to SouthTrust Mobile Services, Inc. and agrees to all terms of the Dealer's Assignment on page 9.

Seller:

HOLLOWAY HOMES, INC.

By: _[signature]_

By: _____

(X) _L.V. Whitehead_  Buyer's Signature    MAY 23, 19 97   Date Signed

(X) _Joyce Whitehead_  Buyer's Signature    MAY 23, 19 97   Date Signed

X _____  , 19 ___
Payment Guaranteed           Date Signed
(See Guaranty Agreement Below)

X _____  , 19 ___
Payment Guaranteed           Date Signed
(See Guaranty Agreement Below)

### GUARANTY AGREEMENT

Each person signing above the words "Payment Guaranteed" above makes the following agreement with every owner of this Installment Note, Security Agreement and Disclosure Statement (the "Note"), and acknowledges receipt of the separate Notice to Cosigner.

As used in this Guaranty Agreement, the words you and your mean each person signing above the words "Payment Guaranteed". In consideration of the credit extended to Buyer and of other value received by you, you guarantee the

Page 9 of 10

prompt and unconditional payment and performance of all of the Buyer's obligations under the Note. If the Buyer fails to pay any sum under the Note when it is due to be paid, whether at original maturity or by acceleration, you agree that you will pay the full amount owed by the Buyer under the Note. You will also pay reasonable attorneys' fees if the holder of the Note refers it to an attorney who is not its salaried employee for collection of the Note or this Guaranty Agreement. Your obligations under this Guaranty Agreement are absolute and unconditional and will not be affected by any extension, renewal, or other change in the time of payment under the Note, or any change in the manner, place or terms of payment under the Note, or the release of or compromise with the Buyer or any other party obligated to pay the sums owed by the Buyer under the Note, or the release of, or failure to perfect any lien or security interest in, any Collateral for the Buyer's obligations under the Note or your obligations under this Guaranty Agreement. The holder of the Note will not be required to exhaust its recourse against the Buyer or any other person or any Collateral for the Buyer's obligations under the Note or your obligations under this Guaranty Agreement before being entitled to receive payment from you under this Guaranty Agreement. You hereby waive demand, presentment, dishonor, notice of dishonor, defenses based on suretyship or impairment of collateral, and notice of acceptance of this Guaranty Agreement by the holder of the Note. If there is more than one Buyer on the Note, "Buyer", as used herein, means each of them and also all of them, jointly and severally. To the extent that we are required to give you notice of any sale or other disposition of the Collateral after default, you agree that the requirement of reasonable notice will be met if we mail or deliver the notice to you at your address shown on the separate Notice to Cosigner, or such other address as you may have furnished us in writing for that purpose, not later than 10 days before the time of such sale or other disposition of the Collateral. If you move and fail to furnish us written notice of your address change, you assume responsibility for ensuring that any notice sent to your address shown on the separate Notice to Cosigner is forwarded to your new address.

## DEALER'S ASSIGNMENT

FOR VALUE RECEIVED, the Seller identified on page 1 of the above Installment Note, Security Agreement and Disclosure Statement (the "Note") hereby assigns all of his, her or its right, title and interest in and to this Note, in and to all Collateral which secures the Note or the Guaranty Agreement, and in and to any other agreement which secures or guarantees payment of the Note, to SouthTrust Mobile Services, Inc., its successors and assigns (herein called "STMS" or "Assignee"), with full power to take legal proceedings in its name or in the name of Seller with respect thereto. Seller represents, warrants and certifies as follows: that Seller has been duly licensed and qualified, if required, and has obtained all permits required under laws of the state of execution of the Note; that the Note arose out of a bona fide sale of the goods described therein; that Seller had title to and full right to sell free and clear of all encumbrances all goods which are part of the Collateral described on the Note; that the Collateral is correctly described on the Note; that references to the security interest reserved in the Collateral under the Note appears on the bill of sale and, where applicable, the certificate of title for the Collateral; that if the Collateral is subject to a state's title laws, and if STMS has furnished Seller with an application for a certificate of title and has authorized Seller to sign such application on behalf of STMS, Seller has signed such application as or for the designated agent, and, at the time of signing such application, Seller made a physical inspection of the Collateral described in such application, verified that the vehicle identification number and descriptive data shown on the application are correct, identified the purchaser(s) signing the application, and witnessed such purchaser(s)' signature(s); that all signatures on the Note are genuine and authorized; that the address of the Buyer is correctly stated on the Note; that during any period of transportation to the Homesite, the structural integrity of the Manufactured Home was maintained so that it will be livable and durable; that the installation or erection of the Manufactured Home on the Homesite complied with the manufacturer's requirements for its anchoring, support, stability and maintenance; that Seller has inspected both the Manufactured Home and its components and has determined that the Manufactured Home has sustained no structural damage or other defects resulting from its transportation or installation, and Seller has also tested the performance of its plumbing, mechanical and electrical systems and Seller has found them to be in good working condition and adequate for the Buyer's household use; the Manufactured Home was purchased from a manufacturer licensed under Miss. Code Ann. § 75-49-9, or was exempt from licensure under Miss. Code Ann. § 75-49-15; the construction, assembly, anchoring and blocking of the Manufactured Home, its components, systems, and appliances were performed, and are, in accordance with the provisions of Miss. Code Ann. § 75-49-1 et seq., and the codes and rules promulgated thereunder by the Commissioner of Insurance of the State of Mississippi, or the applicable codes and rules of such other states where the Manufactured Home was produced to the extent exempted under the provisions of Miss. Code Ann. § 75-49-15; that neither Seller nor, to the knowledge of Seller, the manufacturer or any other party to any transaction related hereto, has loaned, advanced or paid to or for the benefit of the Buyer any part of the costs incurred in the Buyer's downpayment, and that such downpayment was made; that the Manufactured Home, any

options (large appliances, built-in items ⬛⬛ uipment), and any specialty items ⬛⬛ in the purchase price of the Manufactured Home or to be financed under the Note have been delivered to and properly installed or erected on the Homesite, and that any other work to be accomplished at the Homesite and financed under the Note has been completed; that the Buyer was of full legal age and capacity to execute and deliver the Note; and that each Cosigner (as defined in the F.T.C. Credit Practices Rule) was given the separate Notice to Cosigner before signing the Guaranty Agreement or the Note. If there is more than one Buyer on the Note, the foregoing warranties apply to each such Buyer and also to all of them. If any of the foregoing warranties should be breached or untrue, Seller agrees to repurchase the Note from Assignee upon demand and will pay therefor the entire unpaid balance then owing under the Note plus any costs and expenses, including attorneys' fees, incurred by Assignee with respect to the Note and this Dealer's Assignment. Such remedy of Assignee shall be cumulative and not exclusive and shall not affect any other right or remedy Assignee may have against Seller. If so requested by Assignee, Seller agrees to resell the Collateral if it is repossessed by Assignee.

Further, Seller agrees to indemnify Assignee against, and hold Assignee harmless from, all claims and defenses of the Buyer, or any of them, against Seller which any such Buyer asserts against Assignee, whether such claims or defenses arise out of the Note or otherwise, and whether such claims or defenses are asserted in connection with Assignee's attempting to collect or enforce the Note or otherwise. The indemnity agreement herein made by Seller shall continue in full force and effect notwithstanding the payment or discharge of the Note. In the event that any such claim or defense is asserted by the Buyer or any of them, Seller agrees that it will, upon demand and at the option of Assignee, either repurchase the Note for the then remaining balance due thereon plus all expenses, including attorney's fees, incurred by Assignee in connection with any such claim or defense, or make the monthly payments on the Note as and when due from Buyer until such claim or defense is determined or resolved in favor of Seller or Assignee and reimburse Assignee for all costs, including attorneys' fees, incurred by Assignee in connection with any such claim or defense.

2467697.04

This instrument prepared by:
Boult Cummings Conners & Berry, PLC
1600 Division Street, Suite 700
Nashville, TN 37203

## CONTINUING IRREVOCABLE POWER OF ATTORNEY

The undersigned, Wachovia Bank, N.A., a national banking association and including its predecessors-in-interest SouthTrust Bank, N.A and SouthTrust Mobile Services, Inc. ("Grantor"), hereby irrevocably constitutes and appoints Vanderbilt Mortgage and Finance, Inc., a Tennessee corporation (together with any officer on its behalf and its successors and assigns, "Grantee"), its true and lawful attorney and agent with power and authority to do any and all acts and things reasonably necessary to transact all business connected to the manufactured home loans, evidenced by installment loan agreements and retail installment sales contracts (the "Contracts") listed on the final Schedule of Contracts and the schedule of Repo Inventory) to that Purchase and Sale Agreement dated as of February 16, 2005 as amended, supplemented and modified from time to time (the "Purchase and Sale Agreement"), entered into by and Wachovia Bank, N.A. and 21st Mortgage Corporation, together with any manufactured home and/or other real or personal property which secure such Contracts or has otherwise been repossessed or foreclosed upon, including, without limitation, the related security instruments, financing statements, certificates of title, mortgages and deeds of trust, all of which were assigned by Seller to 21st Mortgage Corporation, and a portion of which was subsequently assigned to Grantee and/or its affiliate (the "Security Instruments"), and the Repo Inventory, including those in which Grantor or its predecessors or prior assignors (including, without limitation, SouthTrust Bank, N.A. and SouthTrust Mobile Services, Inc.) are listed as lienholder, mortgagee, beneficiary, or the like, and which Contracts and Security Instruments and property have been sold and assigned to and acquired by 21st Mortgage Corporation pursuant to the terms of the Purchase and Sale Agreement, and certain of such Contracts and Security Instruments and property were subsequently assigned to Grantee and/or its affiliate, including, but not limited to, the following powers and authorities:

a) Endorse, without recourse, pursuant to a stamp approved by Grantor, checks, drafts or other instruments of payments made on the Contracts;

b) Execute and record assignments from Grantor to Grantee or from the party shown as lienholder of record to Grantee of the Contracts and Security Instruments, including without limitation certificates of title, mortgages, deeds of trust, and other security and lien-creating instruments related to the contracts and security instruments, and repossessed or foreclosed manufactured homes or other property;

c) Execute and record, on behalf of itself, the lienholder of record and/or Grantor, as appropriate, releases of liens, security interests, and the like with respect to the Contracts and Security Instruments;

1039211 v1
104716-002 2/28/2005

Penny H Whaley, Register
Blount County Tennessee
Rec #: 286506
Rec'd:     20.00    Instrument #: 439195
State:      0.00
Clerk:      9.00              Recorded
EDP:        2.00    3/21/2005 at 1:45 PM
Total:     22.00            in
             Record Book 2049 Pgs 2955-2958

d) Perform any and all servicing and collection functions with respect to the contracts and security instruments including, without limitation, the servicing functions as contemplated by the purchase and sale agreement;

e) Appear in bankruptcy, receivership or similar insolvency proceedings where the Obligor is in bankruptcy, receivership or similar insolvency status, and file such claims and take such other actions as Grantee may desire in order to recover and collect under the Contract and related Security Instrument;

f) Execute and deliver, on behalf of itself, the lienholder of record and/or Grantor, as applicable or appropriate, any and all instruments of satisfaction or cancellation, or partial or full release or discharge, and all other comparable instruments with respect to the Contracts, the Security Instruments and manufactured homes, real property and/or personal property securing such Contracts including, without limitation, any discharges, releases, satisfactions, bills of sale, financing statements, continuation statements, certificates of title, assignments of title, transfers of title or registration, or applications for transfer of title or registration, or similar forms, with respect to any of the manufactured homes, real property and/or personal property securing such Contracts;

g) Sign and file, without Grantor's signature, such financing and continuation statements, amendments, and supplements thereto, certificates of title, amendments to mortgages and deeds of trust and other documents which Grantee may from time to time deem necessary to perfect, preserve, and protect its security interest and lien in the chattel paper, real property and/or personal property securing such Contracts;

h) Demand, enforce, reduce to possession, collect, receive, receipt for, endorse, comprise, settle, or assign without recourse any and all indebtedness, notes, commercial paper, promises to pay, retail installment sale contracts, installment loans, chattel paper, instruments, choses in action, mortgages and deeds of trust, together with all monies due or to become due under said Contracts, including without limitation payaheads, proceeds from any recourse to dealers, and proceeds from claims on any insurance policies relating to such Contracts and any and all claims, choses in action, and rights and causes of action relating thereto, in its own name, in the name of the lienholder of record or in Grantor's name, including without limitation any and all real property and personal property, Security Instruments, and insurance policies held as security for said Contracts, and all other property of every kind identified in said whole or in part and in connection therewith to execute, acknowledge, or handle any instruments in writing which may become necessary in order to carry the foregoing powers into effect;

i) Execute and deliver, in its name, in the name of the lienholder of record or in Grantor's name, requests for trustee's sale or any other document necessary or deemed necessary to foreclose any real property which is collateral under a

1029211 v1
104716-002 2/28/2005

-2-

security instrument, to recover any personal property which is collateral under any security agreement, to obtain a judgment against any party obligated under any Contract or otherwise to enforce any obligation or promise of any party obligated under a Contract or Security Instrument;

j) Execute, deliver, file and record in its name, in the name of the lienholder of record or in Grantor's name with appropriate state agencies such instruments, deeds, assignments of ownership under certificates of title and bills of sale as Grantee deems necessary to transfer ownership of any personal or real property which secures a contract in order to vest ownership and title in any purchaser of such property following default by the obligors under such Contract and/or Security Instrument;

k) Execute and deliver any and all instruments and take any and all further action in the name of and on behalf of Grantor, or the originator or lienholder of record of the contract, as may be required or deemed desirable to accomplish any and all of the foregoing and carry out the purposes of this Power of Attorney and/or the Purchase and Sale Agreement; and

Grantee is hereby empowered to do any and all lawful acts requisite for effecting the transfer of the Contracts, and the security interests and liens granted thereby, and Grantor hereby ratifies and confirms any and all lawful acts that Grantee shall do pursuant to and in conformity with this Power of Attorney. Grantor further grants unto Grantee and its agents full authority and power to do and perform any and all acts necessary or incident to the execution of the powers herein expressly granted, as the Grantee or its agents might or could do if personally present.

To induce any third party to act hereunder, Grantor hereby agrees that any third party receiving an originally executed copy or paper, facsimile or electronic copy of an originally signed version of this instrument, or an acknowledgment, verification, sworn statement, attestation, confirmation or certification from an officer of Grantee as to matters regulated or addressed by this instrument, may act hereunder and otherwise rely upon this instrument, and Grantor for itself and for its legal representatives, successors, and assigns, hereby agrees to indemnify and hold harmless any such third party by reason of such third party having so acted and relied.

Grantor agrees and confirms that Grantee may assign, grant and/or delegate any or all rights, powers and authority granted to it hereunder to another party through a separate power of attorney or assignment executed by Grantee.

The rights, powers, and authority granted hereby shall commence and be in full force and effect on February 28, 2005 and shall remain in full force and effect thereafter. Grantor has given this Power of Attorney in connection with a sale of the Contracts and related collateral to Grantee and to induce Grantee to purchase the Contracts and related collateral. This Power of Attorney is irrevocable and it is coupled with an interest.

1029211 v1
104716-002 2/28/2005

- 3 -

Grantor shall execute and deliver such further designations, powers of attorney or other instruments as Grantee shall reasonably deem necessary for its purposes hereof.

Grantor executes this Power of Attorney with the intent to be legally bound hereby, and with the intent that the execution shall have the full dignity afforded by the accompanying witnessing and notarization and all lesser dignity resulting from the absence of such witnessing and notarization or any combination thereof.

(Corporate Seal)

ATTEST:

WACHOVIA BANK, N.A.

By: _Timothy B. Schuck_

Title: _Vice President_

State of _NORTH CAROLINA_ )
County of _MECKLENBURG_ )

## CORPORATE ACKNOWLEDGMENT

I, _BARBARA SPEIGLE_ a _NOTARY PUBLIC_ in and for said county, in the state aforesaid, DO HEREBY CERTIFY THAT personally known to me to be _TIMOTHY B SCHUCK_ of Wachovia Bank, N.A., and personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person acknowledged that as such _____ he signed and delivered the said instrument, pursuant to authority given by the Board of Directors of said corporation as his free and voluntary act and deed, and as the free and voluntary act and deed of said corporation for the uses and purposes therein set forth.

GIVEN under my hand and _____ seal this _28_ day of _FEBRUARY_, 2005.

(Notary Seal)

_Barbara L. Speigle_
Notary Public

My commission expires: _11-16-08_

1029211 v1
104716-002 2/28/2005

- 4 -

State of Mississippi UCC-1
Financing Statement

Book & Page: _____   Filed with: _____

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| WHITEHEAD | L.V. | | | WHITEHEAD | JOYCE | | |
| Last Name | First Name | Middle Name | | Last Name | First Name | | Middle Name |
| 1372082 OLD PANOLA ROAD | | L.V.W | | 1372082 OLD PANOLA ROAD | | | J. /./ |
| Mailing Address | | | | Mailing Address | | | |
| COMO | MS | 54 | 38619 | COMO | MS | 54 | 38619 |
| City | State | Cty Cd | ZIP | City | State | Cty Cd | ZIP |
| ███████ | ☐ Transmitting Utility | | | ███████ | | | |
| Tax ID/SSN | | | | Tax ID/SSN | | | |

2. Secured Party (Last Name first for individuals)      3. Assignee (Last Name first for individuals)

| | | |
|---|---|---|
| HOLLOWAY HOMES, INC. | | SOUTHTRUST MOBILE SERVICE |
| Business Name | | Business Name |
| P.O. BOX 591 | | P.O. BOX 2465 |
| Mailing Address | | Mailing Address |
| WATER VALLEY | MS 38965 | BIRMINGHAM | AL | 35201 |
| City | State Cty Cd ZIP | City | State | Cty Cd | ZIP |
| Tax ID/SSN | | Tax ID/SSN |

4. This financing statement covers the following types (or items) of property:

ONE (1) 1997 NEW REDMAN MOBILE HOME, 80X28 4BR 2B S#14719008A/B AND ALL ACCESSORIES, SPARE PARTS AND EQUIPMENT NOW OR HEREAFTER OR USED IN CONNECTION THEREWITH. THIS FINANCING STATEMENT COVERS A MOBILE HOME, OTHER THAN A MOBILE HOME CONSTITUTING INVENTORY. THIS FINANCING STATEMENT SHALL REMAIN EFFECTIVE UNTIL A TERMINATION STATEMENT IS FILED.

5. Check if this statement is filed without the Debtor's signature to perfect a security interest in collateral
☐ already subject to a security interest in another jurisdiction when it was brought into this state or when Debtor's location was changed to this state
☐ which is proceeds if the security interest in the original collateral was perfected
☐ acquired after a change of name, identity, or corporate structure of the Debtor
☐ where the original filing has lapsed
☐ if lien to secure payment of royalty proceeds (effective 1 year)

Office Use Only

6. Check if covered: ☐ Products of Collateral      7. Number of additional sheets attached: ☐

_____      _____
Signature of Debtor                Signature of Secured Party

_____      _____
Signature of Debtor                Signature of Secured Party
                                   (Required only when filed without Debtor Signature)

a) Debtor Copy