UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE: WILLIAM HOLYFIELD, DEBTOR                CASE NO. 08-10735-DWH

JOYCE WHITEHEAD and L.V. WHITEHEAD              PLAINTIFFS

VERSUS                                          ADV. PROC. NO. 09-01177-DWH

WILLIAM HOLYFIELD, LOCKE D. BARKLEY,
WILLIAM B. WALLACE, PANOLA COUNTY,
MISSISSIPPI, and UNKNOWN TENANTS                DEFENDANTS

OPINION

On consideration before the court is the complaint filed by the plaintiffs, Joyce Whitehead and L.V. Whitehead, against the defendants, William Holyfield, Locke D. Barkley, William B. Wallace, Panola County, Mississippi, and unknown tenants; answers and affirmative defenses having been filed by Holyfield, Wallace, and Panola County; a bench trial having been conducted before the court; and the court, having heard and considered same, hereby finds as follows, to-wit:

I.

JURISDICTION

The court has jurisdiction of the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. The plaintiffs' complaint asserts a claim against the Chapter 13 debtor, William Holyfield, as well as, his bankruptcy estate. As such, this is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A), (B), and (O).

Prior to the trial, the parties prepared and executed an Agreed Statement of Uncontradicted Facts, which was incorporated into the trial record.

In summary, this cause of action involves a dispute over the ownership of a parcel of property located in Panola County, Mississippi, as well as, a mobile home situated on the property. The debtor, Holyfield, obtained his interest in the property as a result of a tax sale that occurred in the chain of title to the property. The plaintiffs contend that the tax sale was void and challenge Holyfield's claim of ownership. This general overview is explained more specifically in the factual chronology which follows.

## II.

## FACTUAL CHRONOLOGY

1. On August 10, 1995, William B. Wallace executed a warranty deed to Joyce Lewis Whitehead, conveying the subject real property, which has an address of 15082 Old Panola Road, Como, Mississippi, 38619, for a purchase price of $5,000.00. (Exhibit P-1) To secure a portion of the purchase price, Whitehead executed a deed of trust to Thomas Schuler, trustee for the benefit of Wallace, securing a principal sum of $3,320.00. The deed of trust was dated August 9, 1995, but recorded on December 1, 1997. (Exhibit P-2)

2. On April 15, 1997, Holloway Homes, Inc., ("Holloway Homes") executed a Checkout/Set-Up certificate evidencing the sale of a 1997 Redman Brighton-LE mobile home to Joyce Whitehead and her daughter, Lisa Oliver, for a purchase price of $54,995.00. This document reflects that a 1977 Town and Country mobile home was traded in and given a $5,000.00 trade-in allowance. The payments pursuant to the sales contract were to be $462.84 per month. (Exhibit P-46)

2

3. After purchasing the mobile home with her daughter, Whitehead went to the Office of the Tax Assessor-Collector ("tax assessor") of Panola County, Mississippi, to have the mobile home registered. After discussions with employees at the tax assessor's office, a registration form was executed on May 7, 1997, which provided that the mobile home would be treated as a part of the real estate for taxation purposes. A Certificate of Mobile Home as Real Estate, reflecting Lisa Oliver and Joyce Whitehead as owners, was recorded on June 24, 1997, in the Office of the Chancery Clerk of Panola County, Mississippi, Book B-13 at page 159. (Exhibit P-3) The mobile home was taxed as personal property for 1997 and then continuously as real property beginning in 1998.

4. Shortly thereafter, a Holloway Homes employee informed Oliver and Whitehead that Oliver did not qualify as a borrower because she had previously filed a personal bankruptcy case. Whitehead's husband, L.V. Whitehead, then agreed to participate in the Holloway Homes transaction with Whitehead.

5. On June 18, 1997, an Installment Note, Security Agreement, and Disclosure Statement were executed by L.V. Whitehead and Joyce Whitehead in favor of Holloway Homes, reflecting a financed indebtedness in the sum of $51,672.00, applicable to the purchase of the 1997 Redman Brighton- LE mobile home, which called for 360 payments at $472.56 per month, beginning July 1, 1997. The note was contemporaneously assigned to South Trust Mobile Services, Inc., ("South Trust"). (Exhibit P-4)

6. On July 1, 1997, a UCC-1 Financing Statement, executed by L.V. Whitehead and Joyce Whitehead, was filed in the Office of the Panola County Chancery Clerk in the personal property lien records, as well as, with the Mississippi Secretary of State. (Exhibits P-5

and P-6) At this time, the filing of the UCC-1 Financing Statement was actually not necessary since the mobile home was considered a consumer good subject to a purchase money security interest.

7. After L.V. Whitehead was substituted for Lisa Oliver in the Holloway Homes transaction, the mobile home was not re-registered with the Panola County tax assessor to be treated as a part of the realty for the purposes of taxation. However, because neither of the Whiteheads notified the tax assessor that the identities had been modified, the previously recorded Certificate of Mobile Home as Real Estate remained unchanged.

8. Since neither Lisa Oliver nor L.V. Whitehead had ever owned the underlying real property, the property appeared on the Land Assessment Roll of Panola County for the next several years as being owned by Joyce Lewis Whitehead. (Exhibit DH&W-24)

9. Due to the non-payment of the real property taxes for calendar year 2001, the property was sold at a tax sale on August 26, 2002. The property was purchased at the sale by S&S Properties, LLC, for $438.00. (Exhibit DH&W-10)

10. The tax sale was not redeemed according to law within two years of the tax sale, that is, by August 26, 2004. Prior to the maturity of the tax sale, the Panola County Chancery Clerk, in keeping with Miss. Code Ann. § 27-43-3, provided the following notices, to-wit:

   (a) A letter, dated June 1, 2004, was sent by certified mail to Joyce Lewis Whitehead, 15082 Old Panola Road, Como, Mississippi, 38619. This letter was received at this address by Whitehead's son, Louis Whitehead, on June 5, 2004, as evidenced by his signature.

4

    (b)    The same notice was served on Whitehead by the Sheriff of Panola County as evidenced by his return dated July 7, 2004.

    (c)    The notice was published in *The Southern Reporter* on June 10, 2004, as evidenced by the Proof of Publication, dated July 14, 2004.

(Exhibit DH&W-11)

11. The Panola County Chancery Clerk, James R. Pitcock, testified that he had several conversations with Whitehead regarding the maturity of the tax sale. On August 25, 2004, Whitehead tendered a check payable to the "Chancery Clerk" in the sum of $695.07, to redeem the property from the sale, but the check was returned because of insufficient funds. (Exhibit DH&W-13) Pitcock even offered to meet Whitehead at the courthouse on a Sunday to permit her to have a final opportunity to redeem, but she failed to appear.

12. Pitcock indicated that, in keeping with Miss. Code Ann.§ 27-43-5, his staff searched the Panola County land records, i.e., the records of deeds, mortgages, and deeds of trust, but found no evidence of a lien encumbering the property.

13. As a consequence, there was no notice of the tax sale or the subsequent expiration of the redemption period to the existing lien holder, South Trust. The court finds no fault with the effort of the Panola County Chancery Clerk, primarily because there was no lien in favor of this creditor recorded in the land records that his office was required to search. Pitcock indicated that it was not a customary practice to search the personal property records because those records would not be considered land records as contemplated by Miss. Code Ann. § 27-43-5. (Parenthetically, the court notes that the law has now

changed, effective July 1, 1999, to require that certificates of title be issued for mobile homes, much in the same way as for a motor vehicle.)

14. Because of the foregoing events, there was no compliance with Miss. Code Ann. § 27-43-11, which provides, in pertinent part as follows:

> A failure to give the required notice to such lienors shall render the tax title void as to such lienors, and as to them only, and such purchaser shall be entitled to a refund of all such taxes paid the state, county or other taxing district after filing his claim therefor as provided by law.

15. On December 23, 2004, Whitehead filed a voluntary Chapter 13 bankruptcy case which was assigned Case No. 04-18158. The case remained active until it was dismissed on February 5, 2008. According to the Chapter 13 trustee's final report, principal and interest totaling $12,205.06 was paid, pursuant to Whitehead's confirmed Chapter 13 plan, to Vanderbilt Mortgage and Finance, Inc., the successor to South Trust/Wachovia Bank, N.A., on the indebtedness secured by the mobile home.

16. On February 28, 2005, Wachovia Bank, N.A., the successor to South Trust Mobile Services, Inc., appointed Vanderbilt Mortgage and Finance, Inc., through a Continuing Irrevocable Power of Attorney to do any and all acts regarding the Whitehead contract, which was one of many contracts that were addressed by this power of attorney. (Exhibit P-10)

17. On November 15, 2005, following a request by S&S Properties, LLC, the Panola County Chancery Clerk executed a tax deed to S&S Properties, LLC, conveying the unredeemed Whitehead property which had been sold at the August 26, 2002 tax sale. (Exhibit P-26)

18. On January 22, 2006, S&S Properties, LLC, conveyed the subject property by quitclaim deed to William Holyfield for a purchase price of $2,000.00. (Exhibit DH&W-12)

19. On March 9, 2007, Whitehead leased the real property and mobile home from Holyfield for a rental payment of $550.00 per month.

20. On May 21, 2007, when Whitehead fell behind in her rent payments, Holyfield filed a cause of action against Whitehead in the Justice Court of Panola County for eviction, as well as, to collect past due rent in the sum of $1,800.00. This cause of action was settled and dismissed.

21. On November 13, 2007, Holyfield initiated a second eviction cause of action against Whitehead in the justice court and demanded past due rent of $1,200.00. Despite the fact that the automatic stay, set forth in 11 U.S.C. § 362(a)(3) and (4) had been activated by Whitehead's bankruptcy filing, a judgment was entered against Whitehead in the sum of $1,263.50 on December 28, 2007. (In both the Northern and Southern Districts of Mississippi, the Chapter 13 plan confirmation order provides that the debtor's property, including post-petition income, remains as property of the bankruptcy estate until the debtor receives a discharge. This particular plan provision prevents the unilateral disruption of the administration of a Chapter 13 case by a creditor until relief from the automatic stay is obtained. Therefore, the judgment rendered in the justice court for delinquent rent is void.)

22. Apparently not realizing that the aforementioned judgment was a nullity, on January 14, 2008, Whitehead appealed the justice court decision to the Circuit Court of Panola County, First Judicial District, and posted a supersedeas bond in the sum of $1,500.00.

23. On February 25, 2008, Holyfield filed a Chapter 13 bankruptcy case, which was assigned Case No. 08-10735.

24. After the dismissal of Whitehead's bankruptcy case on February 5, 2008, the cause of action that Holyfield had initiated was tried de novo in the Circuit Court of Panola County on September 25, 2008. On December 2, 2008, a judgment for eviction was entered and Whitehead was ordered to vacate the premises within 10 days. A hearing was scheduled for February 12, 2009, to determine the amount of the unpaid rent.

25. Because Whitehead did not timely vacate the premises, Holyfield filed a motion for contempt. On January 30, 2009, an order of contempt was entered which directed that Whitehead vacate the property by February 2, 2009. If she failed to abide by this deadline, the sheriff was ordered to remove her from the property.

26. On April 30, 2009, Whitehead filed a motion to vacate the judgments of the Panola County Circuit Court, as well as, to dismiss Holyfield's cause of action. On May 6, 2009, an order was entered overruling Whitehead's motion. In the order, the court concluded that Whitehead had no colorable claim of ownership to the property. Holyfield's motion to assess damages was never considered and a final judgment on this particular issue was never entered.

27. On September 29, 2009, Whitehead filed the above captioned adversary proceeding against Holyfield, Wallace, Panola County, et al.

28 On August 9, 2010, Vanderbilt Mortgage and Finance, Inc., assigned and quitclaimed its security interest in the 1997 Redman mobile home, located at 15082 Old Panola Road,

Como, Mississippi, to Joyce Whitehead and L.V. Whitehead. This document contains the following language:

> **NOW THEREFORE**, for a valuable consideration as described in the Mutual Release and Settlement Agreement, the receipt of which is acknowledged by both *Assignor and Assignees, Assignor* quitclaims and assigns to *Assignees,* all of *Assignor's* interest(s), to the extent that any such interest(s) may exist, in the mobile home including all rights to sue to enforce *Assignor's* security interest in the mobile home and to assert claims for damages, to negotiate and settle Assignor's claims or defenses against *Third Parties* relating to the mobile home, with power to enforce in *Assignees'* names or in *Assignor's* name any right or interest the *Assignor* holds in the mobile home, or which may be deemed necessary by *Assignees* to enforce the terms of this Assignment.

(Exhibit P-11)

29. On July 18, 2011, the Circuit Court of Panola County entered an order staying the proceeding that Holyfield had filed against Whitehead in favor of this adversary proceeding being litigated in this court.

## III.

## DISCUSSION

### A. *Rooker-Feldman* Doctrine

. The *Rooker-Feldman* doctrine provides that lower federal courts lack jurisdictional authority to sit in appellate review of state court decisions.

The *Rooker-Feldman* doctrine derives its name from two United States Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed.362 (1923), holding that the jurisdiction of the federal district courts is strictly original, and *District of Columbia Court of*

9

*Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), holding that federal district courts do not have the authority to review final state court judgments. *See United States v. Shepherd*, 23 F.3d 923 (5th Cir. 1994) and 28 U.S.C. § 1257, which provide that federal appellate jurisdiction over state court decisions is vested almost exclusively in the United States Supreme Court. *See also Ingalls v. Erlewine (In re Erlewine)*, 349 F.3d 205 (5th Cir. 2003); *Reitnauer v. Tex. Exotic Feline Found., Inc. (In re Reitnauer)*, 152 F.3d 341 (5th Cir. 1998).

Holyfield and Wallace contend that because of the *Rooker-Feldman* doctrine that this court is precluded from reversing the decision of the Circuit Court of Panola County. In response, this court would state that it has no intention of reversing the Panola County Circuit Court on any substantive decision that was actually litigated and rendered.

The circuit court litigation primarily involved Holyfield's effort to have Whitehead evicted from the real property. The court ordered Whitehead's eviction concluding that she had no colorable title to the real property, as well as, that the automatic stay was no bar to her eviction. While the conclusion about the automatic stay was correct, it was for the wrong reason. When the matter was litigated in the circuit court, Whitehead's bankruptcy case had been dismissed and there was no automatic stay in place to preclude the litigation. This court also agrees with the circuit court's conclusion that Whitehead had no interest in the underlying real property after the tax sale matured.

The critical issue that was not litigated in the circuit court was the status of the lien on the mobile home in favor of South Trust. The circuit court file reveals that Holyfield's attorney commented that Holyfield would deal with the lien issue subsequently.

Since the issue was not litigated and the circuit court made no conclusion as to the validity of the South Trust lien on the mobile home, the *Rooker-Feldman* doctrine does not preclude this court from fully addressing and resolving the issue. Any decision that this court might render concerning the effect, or lack thereof, that the tax sale had on the South Trust lien would not be inconsistent with the circuit court's decision.

The proceeding in the justice court is a completely different matter. In addition to the eviction demand, this was a cause of action to collect a monetary judgment against a Chapter 13 debtor while her bankruptcy case was pending with a confirmed plan and while the automatic stay as provided in § 362(a)(3) and (4) of the Bankruptcy Code was activated. Absent gaining relief from the automatic stay through an order of this court, the monetary judgment was void.

The court will discuss further the viability of the tax sale insofar as the South Trust lien is concerned more specifically hereinbelow.

### B. Efficacy of the Mobile Home Registration and the Tax Sale

The plaintiffs contend that the Panola County Tax Assessor failed to follow Miss. Code Ann. § 27-53-13 and § 27-53-15 when the mobile home was classified as real property for the purpose of taxation. The language of § 27-53-15, which was in effect at the time that Whitehead registered the mobile home, stated in pertinent part, "[t]he mobile home owner who owns the land on which the mobile home is located shall have the option at the time of registration of declaring whether the mobile home shall be classified as personal or real property." Section 27-53-13 stated, "[t]he mobile home owner who does not own the land on which his mobile home is located must declare his mobile home to be personal property at the time of registration and the county tax collector shall enter it on the mobile home rolls as personal property."

11

Whitehead, who undisputedly owned the real property, as well as, an interest in the mobile home, initiated the certification process which she had every right to do. The employees at the tax assessor's office obviously attempted to assist Whitehead because not only could she receive a lower tax rate, she could claim a homestead exemption in both the land and the mobile home when the latter was classified as a part of the realty. Mississippi law provides that, "<u>it is incumbent upon a land owner to be knowledgeable about the assessment on his property</u> and to be diligent to make sure that his taxes are paid." *See Rush v. Wallace Rentals, LLC,* 837 So.2d 191 (Miss. 2003) (citing *Rains v. Teague,* 377 So.2d 924 (Miss. 1979) (citing *Carmadelle v. Custin,* 208 So.2d 51 (Miss. 1968)) (emphasis added).

Section 27-53-13 clearly provides that a mobile home owner who does not own the land on which the mobile home is located <u>must</u> declare the mobile home to be personal property at the time of registration. On the other hand, § 27-53-15 provides that if the mobile home owner does own the land, then that owner has an option to have the mobile home treated as a part of the realty for taxation purposes. The court is of the opinion that it was, therefore, the responsibility of Whitehead, and not the Panola County Tax Assessor, to appropriately register the mobile home. Indeed, the mobile home was assessed for taxation as a part of the realty for several years after the registration had been completed. Consequently, the plaintiffs' complaint about the registration process is not well taken.

As set forth in the factual chronology, because Whitehead did not pay her real property taxes for 2001, the property was sold at a tax sale on August 26, 2002. Whitehead had two years from the date of the tax sale, that is, until August 26, 2004, to redeem the property from the sale and to prevent the sale from maturing to the purchaser, S&S Properties, LLC. Prior to the

maturity of the tax sale, the Panola County Chancery Clerk, in keeping with Miss. Code Ann. § 27-43-3, provided the required statutory notices to Whitehead. Whitehead does not deny that she was served with the notice of the expiration of the redemption period by the Sheriff of Panola County, nor does she assert that the notice was not published in *The Southern Reporter*. She, however, argues that the notice which was mailed to her residence address by certified mail was not technically received by her since the return receipt was signed by her son, Louis Whitehead. At trial, Louis Whitehead testified that he did indeed sign the return receipt when the notice was delivered to his mother's residence. Consequently, it is evident that the notice was mailed to Whitehead's address in keeping with the statute.

Miss. Code Ann. § 27-43-3 also provides, "[t]he failure of the landowner to actually receive the notice herein required shall not render the title void, provided the clerk and sheriff have complied with the duties herein prescribed for them."

In *Rebuild America, Inc. v. Norris*, 64 So.3d 480, 481-82 (Miss. 2011) (en banc), the Mississippi Supreme Court articulated with clarity what is required by § 27-43-3:

> Section 27-43-3 generally requires the chancery clerk to provide notice of tax sale to the property's reputed owner in three forms: (1) by "personal notice as summons issued from the courts are served," (2) by "mail...at his usual street address," and (3) by publication "in a public newspaper of the county in which the land is located...." The Court of Appeals, citing our opinion in *DeWeese Nelson Realty, Inc. v. Equity Services Co.*, stated without qualification: "All three requirements must be met for the redemption notice to be complete and in accordance with the statute." But the requirement of all three methods of notice is not absolute in all cases. Under circumstances where "the clerk and sheriff have complied with the duties herein prescribed for them," the tax sale may be confirmed, even though the owner never received actual notice of the tax sale.

*See also Rush v. Wallace Rentals, LLC*, 837 So.2d 191, 192-200 (Miss. 2003) (tax sale held to be valid although personal notice to be served by the sheriff was returned "not found" and

13

the notice by certified mail was returned undeliverable); *DeWeese Nelson Realty, Inc. v. Equity Servs. Co.*, 502 So.2d 310, 312-14 (Miss. 1986) (tax sale held to be valid although the clerk mailed the redemption notice to the wrong address).

The court is of the opinion, therefore, that it is irrelevant that Whitehead did not sign the return receipt for the notice by certified mail. The notice was sent to her residence and was obviously received there. The evidence is clear that the Panola County Chancery Clerk complied with all three of the requirements set forth in Miss. Code Ann. § 27-43-3. The court has seen no evidence of any technical flaws in the tax sale, or in the noticing requirements that were necessary to inform Whitehead when the period of redemption was to expire.

There is yet another significant issue that must be determined insofar as the tax sale and the period of redemption is concerned. This involves the effect of the tax sale on the lien held by South Trust when the tax sale occurred and when it matured. This issue will be addressed in the following section.

### C. Status of the South Trust/Vanderbilt Mortgage and Finance, Inc., Lien on the Mobile Home

After Whitehead's daughter, Lisa Oliver, could not qualify as a borrower on the Holloway Homes transaction, Whitehead's husband, L.V. Whitehead, agreed to participate in the transaction. In order to pay the balance of the purchase price for the mobile home, the Whiteheads executed the Installment Note, Security Agreement, and Disclosure Statement which evidenced an indebtedness of $51,672.00, secured by the mobile home. This note was contemporaneously assigned to South Trust, and the UCC-1 Financing Statements were filed in the Office of the Panola County Chancery Clerk, as well as, with the Mississippi Secretary of

14

State. At this time, the filing of the UCC-1 Financing Statement was actually not necessary since the mobile home was considered a consumer good subject to a purchase money security interest. Regardless, South Trust held a perfected lien on the mobile home which was effective from the date of the execution of the evidence of indebtedness through the date of the tax sale, as well as, the date that the tax sale matured following the expiration of the statutory redemption period.

Miss. Code Ann. § 27-43-5, provides that prior to the maturity of a tax sale and the expiration of the redemption period, the chancery clerk has the duty to examine the record of deeds, mortgages and deeds of trust to ascertain the names and addresses of all mortgagees, beneficiaries and holders of vendors liens of all lands sold for taxes. Thereafter, the chancery clerk is required to provide a statutory notice to these lien holders that the property has been sold for taxes and that the title to the land will become absolute in the tax sale purchaser unless timely redeemed. The Panola County Chancery Clerk, James R. Pitcock, testified that the South Trust lien was not found because it did not appear in the land records. As a consequence, there was no notice of the tax sale or the subsequent expiration of the redemption period to South Trust. Because of the foregoing, there was no compliance with Miss. Code Ann. § 27-43-11, which provides, in pertinent part, as follows:

> A failure to give the required notice to such lienors shall render the tax title void as to such lienors, and as to them only, and such purchaser shall be entitled to a refund of all such taxes paid the state, county or other taxing district after filing his claim therefor as provided by law.

Since it is undisputed that South Trust had no notice of the tax sale or of the expiration of the period of redemption, the tax sale is void as to South Trust. It is not void as to Joyce Whitehead insofar as the actual land is concerned.

Two recent decisions that support this court's conclusion are *Holly Springs Realty Group, LLC v. BancorpSouth Bank*, 69 So.3d 19 (Miss. Ct. App. 2010), and *SKL Invs. Inc. v. Am. Gen. Fin., Inc.*, 22 So.3d 1247 (Miss. Ct. App. 2009).

As set forth in the factual chronology, the lien and security interest of South Trust was transferred to Vanderbilt Mortgage and Finance, Inc. ("Vanderbilt Mortgage"). For reasons that were not presented to the court, Vanderbilt assigned and quitclaimed its security interest in the mobile home to the Whiteheads on August 9, 2010. At first blush, it appears that the Whiteheads would now stand in the shoes of the lien holder, and the tax sale is void as to that lien holder's security interest.

IV.

CONCLUSION

As a result of the somewhat convoluted sequence of events, the court would make the following conclusions:

1. The plaintiffs' claim that the mobile home was improperly registered by the Panola County Tax Assessor to be classified as real property for the purpose of taxation is not well taken. That part of the plaintiffs' complaint will be dismissed.

2. The plaintiffs' claim that the tax sale that occurred on August 26, 2002 is void, is not well taken as to the land on which the mobile home was placed. Title to the land is vested in the defendant/debtor, William Holyfield. In this context, the allegations that the Panola County Tax Assessor and/or the Panola County Chancery Clerk committed procedural errors in conducting the tax sale and in notifying Whitehead of the maturity of the sale and the expiration of the

redemption period are not well taken. That part of the plaintiffs' complaint will be dismissed and Panola County will be dismissed as a party defendant.

3. Because the lien holder, South Trust, was not notified of the tax sale or of the maturity of the tax sale and the expiration of the redemption period, the tax sale is void as to South Trust and its successors in interest in keeping with the provisions of Miss. Code Ann. § 27-43-11. The mobile home, therefore, remains subject to the lien and the related indebtedness which it secures. Because the security interest in the mobile home has now been assigned and quitclaimed to the Whiteheads, this proceeding now narrows primarily to a cause of action between the Whiteheads and Holyfield.

4. Before this proceeding can be concluded, there are several issues that require clarification, to-wit:

    a. The underpinnings of the relationship between the Whiteheads and Vanderbilt Mortgage. (In this context, the court needs to ascertain whether Vanderbilt Mortgage is a necessary party to this litigation.)

    b. The amount of the indebtedness which is still secured by the mobile home.

    c. Since the trial testimony indicated that Holyfield had leased the mobile home on several occasions, an accounting will have to be developed which reflects the rental income generated, as well as, the expenses incurred by Holyfield in maintaining the mobile home, insuring the mobile home, paying taxes on the mobile home, etc. As to the rental income, there will necessarily have to be an apportionment of the amount of rent that should

be attributed to the mobile home compared to the amount of rent that should be attributed to the "ground" lease. The entitlement to the net proceeds, if any, will then have to be determined by the court.

d. The trial testimony indicated that there was a business relationship between Holyfield and Wallace to the effect that Wallace actually supplied the funds which enabled Holyfield to acquire the property from S&S Properties, LLC, as well as, that he provided the funds which were utilized to pay other expenses relative to the mobile home, such as insurance and maintenance. Although Holyfield is the record title holder of the real property, Wallace still has an economic interest in the outcome of this litigation.

4. The court would not be so presumptive to suggest that the issues listed hereinabove are the only ones that remain outstanding in this proceeding. Consequently, a status conference will be conducted with the parties after the entry of this opinion and the related order to develop a plan to bring this litigation to a conclusion.

An order, consistent with this opinion will be entered contemporaneously herewith.

This the 3rd day of May, 2012.

/s/ David W. Houston, III
DAVID W. HOUSTON, III
UNITED STATES BANKRUPTCY JUDGE