

SO ORDERED,

**Judge Neil P. Olack**
**United States Bankruptcy Judge**
**Date Signed: July 16, 2015**

**The Order of the Court is set forth below. The docket reflects the date entered.**

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF MISSISSIPPI

**IN RE:**

    **WILLIAM HOLYFIELD,**　　　　　　　　　　　**CASE NO. 08-10735-JDW**

    **DEBTOR.**　　　　　　　　　　　　　　　　　**CHAPTER 13**

**JOYCE WHITEHEAD AND**　　　　　　　　　　　**PLAINTIFFS**
**L.V. WHITEHEAD**

**VS.**　　　　　　　　　　　　　　**ADV. PROC. NO. 09-01177-NPO**

**WILLIAM HOLYFIELD**　　　　　　　　　　　　**DEFENDANT**

### MEMORANDUM OPINION AND ORDER ON REMAND

This matter came before the Court[1] on the Order on Appeal issued by the U.S. District

Court for the Northern District of Mississippi, Oxford Division (the "District Court"), in *William*

*Holyfield v. L.V. Whitehead and Joyce Whitehead*, No. 3:13-cv-00227-DMB, 2014 WL 7739345

(N.D. Miss. Sept. 5, 2014) (the "Remand Order"), remanding the Adversary for further

---

[1] The above-referenced adversary proceeding (the "Adversary") was assigned to U.S.
Bankruptcy Judge David W. Houston, III.   Both the Adversary and the above-referenced
bankruptcy case (the "Bankruptcy Case") were then assigned to U.S. Bankruptcy Judge Jason D.
Woodard, who reassigned the Adversary to the oversigned on October 8, 2014.   Given the
dismissal by the Fifth Circuit Court of Appeals of a separate but related appeal on March 5,
2015, and the Court's entry of the Order Retaining Jurisdiction Over Adversary After Dismissal
of Bankruptcy Case (the "Order Retaining Jurisdiction") (Adv. Dkt. 183) on June 18, 2015, the
matter is now ripe for decision.

proceedings.  The District Court held:

a.  The Chancery Clerk of Panola County, Mississippi (the "Chancery Clerk")
was not required by MISS. CODE ANN. § 27-43-5[2] to notify SouthTrust Bank, N.A.
("SouthTrust") of the tax sale on August 26, 2002 of the 1997 Redman Brighton-
LE mobile home (the "Mobile Home") owned by Joyce Whitehead and L.V.
Whitehead (together, the "Whiteheads") or the expiration of the two (2)-year
redemption period.  SouthTrust's lien on the Mobile Home, therefore, did not
survive the tax sale under the invalidity provision of MISS. CODE ANN. § 27-43-
11.[3]  Even if SouthTrust's lien on the Mobile Home remained unaffected by the
tax sale, the settlement by the Whiteheads of their claims against Vanderbilt
Mortgage and Finance, Inc. ("Vanderbilt"), the successor in interest to
SouthTrust, extinguished the lien no later than 2010 when the underlying debt
secured by the Mobile Home was satisfied.

b.  The rent owed by Joyce Whitehead to William Holyfield ("Holyfield"),
who bought the Mobile Home from the tax sale purchaser, must be ascertained
without offsetting the amount of rent that Holyfield collected from other tenants.

c.  The ownership of the insurance proceeds paid to Holyfield by the
insurance company after vandals destroyed the Mobile Home must be re-

---

[2] "It shall be the duty of the clerk of the chancery court to examine the record of deeds, mortgages and deeds of trust in his office to ascertain the names and address of all mortgagees, beneficiaries and holders of vendors liens of all lands sold for taxes [and to] within the time fixed by law for notifying owners, send [notice] to all such lienors so shown of record."  MISS. CODE ANN. § 27-43-5.

[3] "A failure to give the required notice to such lienors shall render the tax title void as to such lienors, and as to them only, and such purchaser shall be entitled to a refund of all such taxes paid the state, county or other taxing district after filing his claim therefor as provided by law."  MISS. CODE ANN. § 27-43-11.

evaluated in light of the extinguishment of the security interest in the Mobile Home.

Although the parties raised multiple issues during the Adversary, the Remand Order requires the Court to address only the following two (2) issues: the amount of rent that Joyce Whitehead owes Holyfield and the ownership of the insurance proceeds.  Having considered the pleadings, exhibits, and evidence, the Court finds as follows:[4]

### Jurisdiction

The Court has jurisdiction over the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O).  The Court exercises continued jurisdiction over the Adversary notwithstanding the dismissal of Holyfield's Bankruptcy Case for the reasons set forth in the Order Retaining Jurisdiction entered on June 18, 2015.

### Facts

The Court finds it unnecessary to reopen the record on remand.  On the issues before the Court, hearings were held on April 16-17, 2012 and September 17, 2012, and status conferences were held on May 14, 2012 and May 25, 2012.  The record is already voluminous.[5]

1.      On August 10, 1995, William B. Wallace ("Wallace") executed a warranty deed

---

[4] Pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure, the following constitutes the findings of fact and conclusions of law of the Court without regard to which section of the Opinion they are found.

[5] The record includes 197 exhibits and 398 pages of hearing transcripts.

(the "Warranty Deed") (J.W. Ex. 1; H. Ex. 1)[6] conveying 1.5 acres of real property located at 15082 Old Panola Road, Como, Mississippi (the "Land") to Joyce Whitehead.  To finance the purchase price, she obtained a loan from Wallace and signed a deed of trust (the "DOT") (J.W. Ex. 2) in favor of Wallace on August 9, 1995 as security for repayment of the loan.  The DOT was recorded in the Land Assessment Roll of Panola County (the "Land Roll") in the Chancery Clerk's office.

2.      On April 15, 1997, Joyce Whitehead and her daughter, Lisa Oliver ("Oliver"), purchased the Mobile Home from Holloway Homes, Inc. ("Holloway Homes") for $54,995.00. Holloway Homes financed the purchase of the Mobile Home and delivered and affixed the Mobile Home to the Land on April 23, 1997.  (J.W. Ex. 46; H. Ex. 2).

3.      At the office of the Panola County Tax Assessor, Joyce Whitehead and Oliver registered the Mobile Home as part of the Land for tax purposes.[7]  A Certificate of Mobile Home as Real Estate (the "Certificate") (J.W. Ex. 3; H. Ex. 4) was issued and recorded in the Land Roll.  Shortly thereafter, Holloway Homes informed Joyce Whitehead that Oliver had failed to qualify as a co-signer on the loan and cancelled their agreement.

4.      On June 18, 1997, Joyce Whitehead and her then husband, L.V. Whitehead, executed a new Installment Note, Security Agreement, and Disclosure Statement (the "Mobile

---

[6] Joyce Whitehead's exhibits are cited as "(J.W. Ex. ____)", and Holyfield's exhibits are cited as "(H. Ex. ____)".

[7] Under MISS. CODE ANN. § 27-53-15, a mobile homeowner who owns the land on which a mobile home is located has the option of classifying the mobile home as real property rather than personal property for tax purposes if certain requirements are met.  In general, a mobile homeowner will prefer to designate a mobile home as real property because of a lower tax rate and the availability of a homestead exemption.

Home Security Agreement") (J.W. Ex. 4) for the purchase of the Mobile Home.[8]  The Mobile

Home Security Agreement required the Whiteheads to pay $472.66 per month for 360 months

beginning July 1, 1997.   Holloway Homes contemporaneously assigned the Mobile Home

Security Agreement to SouthTrust.   On July 1, 1997, SouthTrust filed Uniform Commercial

Code (UCC) Financing Statements (J.W. Exs. 5-6) reflecting the sale and related financing of the

Mobile Home in the personal property lien records of the Chancery Clerk and the Mississippi

Secretary of State.  The UCC Financing Statements were not filed in the Land Roll.  Moreover,

the Certificate designating the Mobile Home as part of the Land for tax purposes remained in the

names of Joyce Whitehead and Oliver and was never changed to substitute L.V. Whitehead for

Oliver.

5.      Joyce Whitehead did not pay her 2001 *ad valorem* taxes, and the Panola County

Tax Collector sold the Land for taxes to S&S Properties, LLC ("S&S") for $452.91 on August

26, 2002. (J.W. Ex. 26; H. Ex. 9); *see* MISS. CODE ANN. § 27-41-15, § 27-53-17(a).[9]   The

Chancery Clerk provided proper notice[10] of the tax sale and expiration of the two (2)-year

redemption period[11] to Joyce Whitehead, but she failed to pay the taxes due before the expiration

---

[8] It does not appear that L.V. Whitehead ever lived in the Mobile Home.

[9] In Mississippi, lands burdened by unpaid taxes may be sold at a tax sale.  MISS. CODE ANN. § 27-41-55.  Moreover,  "[i]n cases where [a] mobile home is assessed on the land rolls, the penalty for nonpayment or delinquency of taxes [is] the same as is prescribed by law in regard to real estate."  MISS. CODE ANN.  § 27-53-17(1)(a).

[10] As noted previously, the Chancery Clerk is required to examine "the record of deeds, mortgages and deeds of trust in his office" and provide notice of the tax sale and redemption period to "all such lienors so shown of record."  MISS. CODE ANN. § 27-43-5.

[11] Land that has been sold for taxes may be redeemed by the owner within two (2) years of the tax sale.  MISS. CODE ANN. § 27-45-3.

of the redemption period on August 26, 2004.  (J.W. Ex. 8); *see* MISS. CODE ANN. § 27-43-1, § 27-43-2.

6.      The Chancery Clerk did not notify SouthTrust of the tax sale or the two (2)-year redemption period because SouthTrust's security interest in the Mobile Home was not listed in the Land Roll but only in the UCC Financing Statements filed in the personal property lien records.[12]

7.      On December 23, 2004, Joyce Whitehead filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code.  (Case No. 04-18158-DWH, Dkt. 1).[13]  She listed the Mobile Home as an asset of her bankruptcy estate in "Schedule A. Real Property" (*Id*. at 5) and identified SouthTrust as her only creditor (*Id*. at 10).  In her chapter 13 plan, Joyce Whitehead proposed to retain the Mobile Home and pay SouthTrust $99.26 per month toward an arrearage of $5,955.71 that accrued from March 2004 through February 2005 and $472.66 per month on the ongoing payments, beginning in March 2005.  (J.W. Ex. 12).

8.      On February 28, 2005, Wachovia Bank, N.A., the then successor–in–interest to SouthTrust, granted power of attorney to Vanderbilt to enforce and maintain the Mobile Home Security Agreement. (J.W. Ex. 10).

9.      S&S wrote Joyce Whitehead a letter dated June 2, 2005 inviting her to engage in negotiations to repurchase the Land.  (J.W. Ex. 34).  S&S wrote Joyce Whitehead again but in its second letter informed her that she would be evicted from the Mobile Home unless she paid S&S

---

[12] The Chancery Clerk did not notify L.V. Whitehead either of the tax sale or expiration of the two (2)-year redemption period because his ownership interest in the Mobile Home also was not disclosed in the Land Roll.

[13] Citations to the record are as follows: (1) citations to docket entries in the Adversary are cited as "(Adv. Dkt. ____)"; (2) citations to docket entries in the Bankruptcy Case are cited as "(Bankr. Dkt. ____)"; and (3) citations to docket entries in other adversary proceedings and bankruptcy cases are cited to the proceeding or case number first, and then to the docket number.

$1,211.96 in unpaid rent and taxes.  (J.W. Ex. 35).  Joyce Whitehead testified that she did not recall entering into an agreement with S&S to rent or repurchase the Mobile Home, and no copy of such a written agreement was submitted in the record.

10.     At S&S's request, the Chancery Clerk on November 15, 2005 executed a tax deed conveying the unredeemed Land to S&S.  (J.W. Ex. 26; H. Ex. 10); *see* MISS. CODE ANN. § 27-45-23.[14]  Approximately two (2) months later, on January 22, 2006, S&S signed a quitclaim deed (the "Quitclaim Deed") (J.W. Ex. 25; H. Ex. 12) conveying its interest in the Land to Holyfield for a purchase price of $2,000.00.

11.     In a letter dated February 15, 2007, Holyfield's attorney informed Joyce Whitehead that Holyfield had purchased both the Land and Mobile Home from S&S, and she could either lease the Mobile Home or vacate the premises.  (J.W. Ex. 15).  Joyce Whitehead protested to Holyfield that she was making payments to Vanderbilt through her chapter 13 bankruptcy plan, but Holyfield insisted that her bankruptcy case did not protect her interest in the Mobile Home.  On March 9, 2007, Joyce Whitehead signed a Rental Agreement (the "Rental Agreement") (H. Ex. 14), in which she agreed to pay Holyfield $550.00 per month under a month-to-month tenancy.  She further agreed to pay a $50.00 late charge for any rent paid more than ten (10) days after the date due.  Therefore, in order to continue living in the Mobile Home, Joyce Whitehead had agreed to pay $571.92 per month to Vanderbilt through her confirmed plan and $550.00 per month to Holyfield under the Rental Agreement.

12.     Joyce Whitehead became delinquent in her payments under the Rental Agreement, and Holyfield sent her an eviction notice (J.W. Ex. 60) dated May 9, 2007

---

[14] "When the period of redemption has expired, the chancery clerk shall, on demand, execute deeds of conveyance to individuals purchasing lands at tax sales."  MISS. CODE ANN. § 27-45-23.

demanding that she either vacate the Mobile Home or pay him $1,800.00. On May 21, 2007, he filed an action against her in the Justice Court of Panola County, Mississippi ("Justice Court") seeking her eviction and $1,800.00 in unpaid rent (the "First Justice Court Action"). (J.W. Ex. 16). Holyfield did not obtain relief from the automatic stay provided under 11 U.S.C. § 362(a) before initiating the First Justice Court Action.[15] Joyce Whitehead paid the past due rent, and the First Justice Court Action was dismissed.

13.      Joyce Whitehead again became delinquent in her payments under the Rental Agreement, and Holyfield filed a second eviction and collection action in Justice Court on November 13, 2007 seeking $1,200.00 in unpaid rent. (the "Second Justice Court Action"). (J.W. Ex. 17). Again, Holyfield did not seek permission from the Bankruptcy Court before bringing suit against Joyce Whitehead. The Justice Court entered a judgment evicting Joyce Whitehead and awarding Holyfield unpaid rent through December 2007 in the amount of $1,200.00 and court costs of $63.50 (the "Justice Court Judgment") (J.W. Ex. 18) dated January 8, 2008. On January 14, 2008, Joyce Whitehead appealed the Justice Court Judgment to the Circuit Court of Panola County, Mississippi (the "Circuit Court") for a *de novo* proceeding. (J.W. Ex. 19); *see* MISS. CODE ANN. § 11-51-83.

14.      The rent that Joyce Whitehead paid Holyfield made it difficult for her to remain current in her chapter 13 plan payments on her limited income, and she became delinquent in her plan payments. On the motion of the chapter 13 standing bankruptcy trustee, an order was

---

[15] A debtor who files a petition for relief under the Bankruptcy Code is entitled to an automatic stay of most actions against the debtor, the debtor's property, or property of the estate. *See* 11 U.S.C. § 362(a); *In re Mantachie Apt. Homes, LLC*, 488 B.R. 325, 331 (Bankr. N.D. Miss. 2013). The automatic stay is a "key component of federal bankruptcy law [and] is one of the fundamental debtor protections provided by the bankruptcy laws." *S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142, 1146 (5th Cir. 1987) (quotation omitted).

entered dismissing her chapter 13 bankruptcy case on February 5, 2008. (J.W. Ex. 64). During

the life of her bankruptcy case, from December 23, 2004 until February 5, 2008, she had paid

principal and interest of $12,205.06 pursuant to her confirmed chapter 13 plan on the debt

secured by the Mobile Home although the Mobile Home had been conveyed to S&S by tax deed

in 2005 and then was purchased by Holyfield from S&S in 2006. (J.W. Ex. 66).

15.     On February 25, 2008, Holyfield filed his own voluntary petition for relief under

chapter 13 of the Bankruptcy Code. (Bankr. Dkt. 1). In "Schedule A-Real Property," Holyfield

listed the Land as an asset of his estate. (*Id*.). He did not list the Mobile Home separately from

the Land in his bankruptcy schedules and also did not disclose that he received (or was entitled

to receive) rent from the lease of the Mobile Home.

16.     On September 25, 2008, the Circuit Court conducted a *de novo* trial on Joyce

Whitehead's appeal of the Justice Court Judgment. Joyce Whitehead challenged the Justice

Court Judgment on the ground that Holyfield's commencement and litigation of the Second

Justice Court Action during the pendency of her bankruptcy case violated the automatic stay in

11 U.S.C. § 362(a)(3) and (4).[16] (J.W. Ex. 61). Holyfield argued that the tax sale on August 26,

2002 (which had matured on August 26, 2004) conveyed the Land and Mobile Home to S&S

before Joyce Whitehead commenced her bankruptcy case on December 23, 2004, and, therefore,

Joyce Whitehead had no legal or equitable interest in the Mobile Home when Holyfield initiated

the Second Justice Court Action on November 13, 2007. *See* 11 U.S.C. § 541. Holyfield also

pointed out that Joyce Whitehead had continued paying him rent for several years after

confirmation of her chapter 13 plan, thus indicating that she did not consider the Mobile Home to

---

[16] The filing of a bankruptcy petition operates as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). It also operates as a stay of "any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C. § 362(a)(4).

constitute property of her bankruptcy estate. (J.W. Ex. 59). On December 2, 2008, the Circuit

Court entered a Judgment of Eviction (J.W. Ex. 27) against Joyce Whitehead, ordering her to

return possession of the Mobile Home to Holyfield within ten (10) days.

17.     Joyce Whitehead filed another chapter 13 petition for relief on December 31,

2008 in Case No. 08-15618-DWH, but that case was short lived. An Order of Dismissal for

Failure to Timely File Documents or to Pay Required Fees (Case No. 08-15618-DWH, Dkt. 11)

was entered on February 6, 2009, and the bankruptcy case was closed on April 9, 2009. (*Id.* at

14).

18.     On April 14, 2009, Joyce Whitehead filed a motion in Circuit Court seeking relief

from the Judgment of Eviction on jurisdictional grounds. Her arguments mirrored those she

made in her *de novo* appeal of the Justice Court Judgment—namely that the automatic stay was

in effect when the Second Justice Court Action was commenced. On April 30, 2009, the Circuit

Court entered an order concluding that Joyce Whitehead's possessory interest in the Mobile

Home was no greater than that of a "squatter" at the time she filed her bankruptcy petition, and,

therefore, her interest was insufficient for protection by the automatic stay. (J.W. Ex. 74; H. Ex.

28). The Circuit Court further ordered that a hearing be set at a later time to determine the

amount of rent she owed Holyfield.

19.     Joyce Whitehead became delinquent in her payments under the Mobile Home

Security Agreement to Vanderbilt, and on March 26, 2009 Vanderbilt sued the Whiteheads in

Circuit Court to enforce its rights. (J.W. Ex. 153).

20.     Because of her failure to vacate the Mobile Home within the time frame provided

in the Judgment of Eviction, the Circuit Court found Joyce Whitehead to be in contempt of court

and ordered the Sheriff of Panola County (the "Sheriff") to forcibly remove her if she did not

leave the premises by February 2, 2009.  (H. Ex. 40).  The Sheriff removed Joyce Whitehead

from the Mobile Home sometime in February 2009.[17]  From January 2008 through February

2009 (fourteen (14) months), she did not pay Holyfield any rent.

21.     Holyfield began leasing the Mobile Home to other tenants in March 2009.

22.     On September 29, 2009, the Whiteheads initiated the Adversary against

Holyfield, Wallace, Locke D. Barkley (the chapter 13 standing trustee), and unknown tenants of

the Mobile Home (Adv. Dkt. 1).  The Whiteheads then filed the Plaintiffs' Amended Complaint

to Void Tax Sale, Determine Title to Personal Property, for Delivery of the Personal Property to

the Plaintiffs, for Damages Relating to the Conversion of the Personal Property by the Defendant

and to Deny Discharge of a Specific Debt (the "Amended Complaint") (Adv. Dkt. 66) on

October 29, 2010.  In the Amended Complaint, the Whiteheads added Panola County as a

defendant and asked the Court to set aside the tax sale of the Mobile Home and require the

Chancery Clerk to register the Mobile Home as their personal property, retroactively from the

date of the original registration.  They also asked the Court to order Holyfield to deliver

possession of the Mobile Home to them and sought $100,000.00 in damages against Holyfield

for conversion of the Mobile Home, lost rent, and violations of 11 U.S.C. § 362, and an

additional $100,000.00 in punitive damages.  With respect to their claim for lost rent, the

Whiteheads alleged they were entitled to all rental income paid Holyfield by other tenants of the

Mobile Home after Joyce Whitehead was evicted in February 2009 as they were the true owners

of the Mobile Home.  On November 12, 2010, Holyfield filed the Amended Answer, Defenses

and Counterclaim of William Holyfield (the "Counterclaim") (Adv. Dkt. 69) seeking unpaid rent

of $17,400.00 and attorney's fees.   Joyce Whitehead filed the Plaintiff Joyce Whitehead's

---

[17] Test. of J.W., Hr'g Tr. at 71-73 (Apr. 16, 2012).

Answer to Defendant/Counter-Plaintiff Holyfield's Counterclaims and Affirmative Defenses (Adv. Dkt. 72) on November 26, 2010.

23.     On August 9, 2010, Vanderbilt executed an Assignment of Interest in Security Agreement (the "Assignment") (J.W. Ex. 11) in favor of the Whiteheads, assigning its interest in the Mobile Home Security Agreement to the Whiteheads "to the extent that any such interest(s) may exist."  The Assignment was part of a broader settlement reached between Vanderbilt and the Whiteheads as a result of the lawsuit initiated by Vanderbilt in Circuit Court.  The terms of the settlement were not disclosed in the record except that the Whiteheads no longer owed any debt secured by the Mobile Home.[18]

24.     On July 18, 2011, the Circuit Court stayed the *de novo* appeal pending the resolution of the Adversary.  At the time the stay went into effect, the damages issue remained pending before the Circuit Court.

25.     In March 2012, the Mobile Home was vandalized.  Through an insurance policy purchased by Holyfield on the Mobile Home, Holyfield received $5,411.25 in insurance proceeds.  (J.W. Ex. 157).  The insurance funds were placed in the escrow account of Holyfield's counsel pending resolution of the Adversary.

## Procedural History

### A.     Bankruptcy Court Proceedings

26.     In total, the Bankruptcy Court conducted two (2) hearings and two (2) status conferences in the Adversary, resulting in three (3) orders.

27.     The hearing on the validity of the tax sale, the status of SouthTrust's lien, and the competing claims of Joyce Whitehead and Holyfield to the rental income was held on April 16

---

[18] Test. of J.W., H'rg Tr. at 101-02 (Apr. 16, 2012).

and 17, 2012.  The witnesses who testified included Joyce Whitehead, L.V. Whitehead, David

Garner (the Panola County Tax Assessor), James. R. Pitcock (the Chancery Clerk), Holyfield,

Wallace, Thomas S. Shuler (counsel for Holyfield), and Herbert Higgins (an employee of S&S).

28.     In the first order signed on May 3, 2012 (the "First Bankruptcy Order") (Adv.

Dkt. 131), the Bankruptcy Court concluded that:

a.   The Panola County Tax Assessor properly registered the Mobile Home as

real property for tax purposes, and the Chancery Clerk properly conducted the tax

sale on August 26, 2002.

b.   The tax sale was valid as to the Land and, therefore, title to the Land

passed to S&S and later from S&S to Holyfield, who is the current owner of the

Land.

c.    The lien on the Mobile Home survived the tax sale because the Chancery

Clerk failed to notify SouthTrust of the tax sale or the expiration of the two-year

redemption period.  For this reason, "the tax sale is void as to South Trust [*sic*]

and its successors in interest."[19]

d.   The Whiteheads (through Vanderbilt and Wachovia), hold a security

interest in the Mobile Home.

(Adv. Dkt. 131 at 16-18; Adv. Dkt. 132).  The Bankruptcy Court also dismissed Panola County

from the Adversary.  The First Bankruptcy Order did not address the following issues:  (1)  the

amount of unpaid rent that Joyce Whitehead owed Holyfield; (2)  the amount of rent that

---

[19]  The  legal  basis  for  the  Bankruptcy  Court's  determination  that  SouthTrust's  lien
survived the tax sale was the provision in MISS. CODE ANN. § 27-43-11 that a "failure to give the
required  notice  to  .  .  .  lienors  shall  render  the  tax  title  void  as  to  such  lienors."  *Id*.  The
Bankruptcy Court ruled that because SouthTrust's lien on the Mobile Home was evidenced by
the UCC Financing Statements filed in the personal property lien records, the Chancery Clerk
should have included SouthTrust in the notice of the tax sale.

Holyfield collected from other tenants who leased the Mobile Home from March 2009 until 2012 when the Mobile Home was destroyed by vandals; and (3) the amount of expenses Holyfield incurred in maintaining the Mobile Home in reasonable condition.

29.    After conducting status conferences on May 14, 2012 and May 25, 2012, the Bankruptcy Court issued the Supplemental Order (the "Second Bankruptcy Order") (Adv. Dkt. 137) on June 4, 2012, making the following additional conclusions:

a.    Holyfield owns both the Land and Mobile Home by virtue of the Quitclaim Deed from S&S, but the Mobile Home is encumbered by the lien previously held by SouthTrust and Vanderbilt.

b.    Vanderbilt assigned its security interest to the Whiteheads who now hold the lien on the Mobile Home.

c.    The Whiteheads' right to enforce the lien on the Mobile Home is "in rem" only and is defined by the Mobile Home Security Agreement.

d.    The Whiteheads are entitled to $5,411.25 in insurance proceeds and that "[i]f the insurance proceeds are insufficient to restore the mobile home to a reasonable condition, Holyfield would then be liable for any deficiency as a post-petition claim."

e.    "[N]o evidence has been presented that would merit a finding of misconduct on the part of Wallace or an assessment of damages against him."

(Adv. Dkt. 137).

30.    The Bankruptcy Court gave the parties thirty (30) days to resolve the remaining damages issues, but they were unable to do so.  A second hearing, therefore, was held on

September 17, 2012 after which the Bankruptcy Court issued a third order (the "Final

Bankruptcy Order") (Adv. Dkt. 150) on September 20, 2012 holding that:

> a.  The "costs and expenses necessary to restore the [M]obile [H]ome to a
>
> habitable condition" is $5,911.25.

> b.  The amount of Whiteheads' claim against Holyfield for rent collected by
>
> him from tenants who occupied the Mobile Home from March 2009 until early
>
> 2012 cannot be determined from the evidence presented but should be offset by a
>
> $500.00 insurance deductible for the repairs on the Mobile Home.

> c.  Joyce Whitehead owes Holyfield unpaid rent of $8,400.00.

> d.  Because of the inconclusive evidence offered in support of the competing
>
> rental claims, "other than the insurance policy proceeds in the sum of $5,411.25,
>
> Holyfield owes the [Whiteheads] nothing, and the plaintiff, Joyce Whitehead,
>
> owes Holyfield nothing."

(Adv. Dkt. 150).  Finally, the Bankruptcy Court ordered the Whiteheads to remove the Mobile

Home from the Land within twenty (20) days.  (*Id.*).

**B.    Holyfield's Appeal to the District Court**

31.    Holyfield appealed the First Bankruptcy Order, the Second Bankruptcy Order,

and the Final Bankruptcy Order (collectively, the "Bankruptcy Orders") to the District Court in

Case No. 3:13-cv-00227-DMB.[20]  Holyfield made the following four (4) arguments on appeal:

(1) the lien held by SouthTrust and its successors, including the Whiteheads, did not survive the

---

[20] The Whiteheads appealed the Bankruptcy Orders to the District Court in Case No.
3:13-cv-00190-DMB but failed to file an appellate brief and their appeal was dismissed for lack
of prosecution.  *Whitehead v. Holyfield*, 3:13-cv-00190-DMB (N.D. Miss. Aug. 19, 2014).  The
Whiteheads then appealed the dismissal by the District Court to the Fifth Circuit Court of
Appeals.  When they failed to file an appellate brief, the Fifth Circuit dismissed their appeal on
March 5, 2015. *Whitehead v. Holyfield (In re Holyfield)*, No. 14-60616 (5th Cir. Mar. 5, 2015).

tax sale in 2002 because Miss. Code Ann. § 27-43-11 applies only to those lienholders to whom the Chancery Clerk is required to give notice, and SouthTrust is not one of them; (2) even if the lien survived the tax sale, SouthTrust's security interest was unenforceable insofar as the underlying indebtedness was extinguished in 2010 when the Whiteheads settled their claims with Vanderbilt;[21] (3) Holyfield was entitled to unpaid rent; and (4) the Whiteheads were not entitled to the insurance proceeds flowing from the damage to the Mobile Home.  (Remand Order at 6). Holyfield did *not* appeal the majority of the findings of fact and conclusions of law of the Bankruptcy Court, including that:  (1) the Mobile Home was lawfully assessed by the Chancery Clerk as a part of the Land and was sold for taxes along with the Land in 2002; (2) the Chancery Clerk gave Joyce Whitehead all required notices of her right to redeem the Mobile Home and Land; (3) L.V. Whitehead never registered his ownership of the Mobile Home, and, therefore, the Chancery Clerk had no information about his ownership interest in order to send him any notice; (4) the 2002 tax sale was valid and passed title to both the Mobile Home and Land to S&S who later conveyed both the Mobile Home and Land to Holyfield; and (5) the Justice Court Judgment evicting Joyce Whitehead and awarding Holyfield unpaid rent through December 2007 was void.  (No. 3:13-cv-00227-DMB, Dkt. 23 at 9 n.1 & 12 n.2).

32.     The Whiteheads did not submit a statement of issues on appeal or an appellate brief to the District Court.

33.     Holyfield's Bankruptcy Case was dismissed on September 28, 2012 and was closed on September 19, 2014.  (Bankr. Dkt. 114, 118); *see* Order Retaining Jurisdiction.

---

[21] *See Frierson v. Miss. Road Supp. Co.*, 75 So. 2d 70, 72 (1954) ("If no debt exists, then the lien perishes.").

C.      **Remand Order**

34.      In its Remand Order, the District Court found that because the Mobile Home

Security Agreement was not recorded in any of the lienholder categories enumerated in MISS.

CODE ANN. § 27-43-5, the Chancery Clerk was not required to notify SouthTrust of the tax sale

or the redemption period.  (Remand Order at 9-10).  Accordingly, the District Court ruled that

the Chancery Clerk's failure to notify SouthTrust did not render the tax sale void as to

SouthTrust under the invalidity provision of MISS. CODE ANN. § 27-43-11, and the tax deed

issued by the Chancery Clerk in 2005 extinguished the otherwise valid security interest held by

SouthTrust.  (*Id*.).

35.      The District Court found, in the alternative, that notwithstanding the validity of

the tax sale as to the security interest perfected by the Mobile Home Security Agreement, the lien

was extinguished no later than 2010 when the debt underlying the lien was satisfied as a result of

the settlement reached between the Whiteheads and Vanderbilt.  (*Id*. at 10).

36.      The District Court next concluded that because the security interest in the Mobile

Home was extinguished in 2005 by the conveyance of the tax deed, the unpaid rent owed

Holyfield could not be offset by the rent collected by Holyfield from other tenants who occupied

the Mobile Home from March 2009 until 2012 when it was destroyed by vandals, even assuming

that the Mobile Home Security Agreement included the right to collect that rent.  (*Id*. at 10-11).

The District Court instructed the Bankruptcy Court to determine the amount of rent owed

Holyfield on remand.

37.      Finally, the District Court ruled that because the Whiteheads were not entitled to

enforce any security interest in the Mobile Home after the conveyance of the tax deed, they were

not entitled to the insurance proceeds to repair and restore the Mobile Home to a reasonable

condition.  (*Id*. at 11-12).  The District Court instructed the Bankruptcy Court to re-evaluate the

issue of ownership of insurance proceeds on remand.

**Discussion**

It is the law of the case that the conveyance of the tax deed extinguished SouthTrust's

lien on the Mobile Home, and the Whiteheads did not acquire any interest in the Mobile Home

by virtue of the Assignment of the Mobile Home Security Agreement signed by Vanderbilt.

Accordingly, Holyfield is entitled to a judgment declaring that the conveyance of the Land by tax

deed to S&S on November 15, 2005 extinguished any security interest in either the Land or

Mobile Home and that Holyfield later became owner of the Land and Mobile Home on January

22, 2006 by virtue of the Quitclaim Deed signed by S&S.  The only issues for the Court's

consideration on remand are the amount of rent that Joyce Whitehead owes Holyfield and the

ownership of the insurance proceeds.

**A.    Rent**

The term of the Rental Agreement began on March 9, 2007 and continued thereafter on a

monthly basis.  The language regarding the payment of rent is as follows:

> The Renter, in consideration of the terms, conditions, covenants, and possession
> of the premises hereby agrees to rent the said premises for the stated terms and
> agrees to pay as rent the sum of $550.00 per month, the first monthly payment to
> be made on or before the 3-9-07 [*sic*] day of 4-9-07 [*sic*], and a like payment to be
> made on the same day of each and every month of this Rental Agreement.  A late
> charge of $50.00 shall be paid for any rent payment not made within ten (10) days
> of the date when due.

(H. Ex. 14 at 1).  The testimony at the two (2) hearings established that the Sheriff removed

Joyce Whitehead from the Mobile Home in February 2009, and Holyfield took possession of it at

that time.  Under Mississippi law, Holyfield's possession of the Mobile Home relieved Joyce

Whitehead of any future rent.  *See Weeks v. Cal-Maine Foods, Inc*., 522 So. 2d 725, 728 (Miss.

1987).  Joyce Whitehead, therefore, owed no rent after February 2009.  The question remains as to the amount of unpaid rent that accrued from March 2007 (when she entered into the Rental Agreement) through February 2009 (when the Sheriff removed her).

The First Justice Court Action was commenced by Holyfield on May 21, 2007 but was dismissed when Joyce Whitehead paid the arrearage due through May 2007.  Thus, no unpaid rent is owed for the months she lived in the Mobile Home from March 2007 through May 2007. Holyfield then initiated the Second Justice Court Action on November 13, 2007 and was awarded the Justice Court Judgment of $1,263.00 in unpaid rent due through December 2007, plus court costs.  The Bankruptcy Court, however, determined that the Justice Court Judgment was void because the proceeding was commenced during the pendency of Joyce Whitehead's bankruptcy chapter 13 case in violation of the automatic stay under 11 U.S.C. § 362.  Holyfield did not appeal this aspect of the Bankruptcy Orders.  Moreover, he did not seek payment of rent for the period before December 2007.  (Br. of Appellant, William H. Holyfield, Case No. 3:13-CV-000227-DMB, Dkt. 23).  Thus, the Court finds that no unpaid rent is owed for any delinquency that may have accrued during the period she lived in the Mobile Home from June 2007 through December 2007.  For the period after December 2007, the exhibits and testimony indicate that Joyce Whitehead paid no rent from January 2008 through February 2009. Holyfield, therefore, is entitled to $8,400.00[22] for these fourteen (14) months.

This finding that Joyce Whitehead owes Holyfield $8,400.00 in unpaid rent is undisputed in the record.  The Bankruptcy Court denied Holyfield any rent in the Bankruptcy Orders only because it offset the amount of rent that it concluded that Holyfield owed Joyce Whitehead under the Assignment.  Although the amount of rent owed by Holyfield was uncertain because he could

---

[22] $8,400.00 = ($550.00 + $50.00) (monthly rent plus late charge) × 14 months.

not recall the dates other tenants occupied the Mobile Home, Joyce Whitehead's testimony established the months she failed to pay rent after December 2007. The Bankruptcy Court nevertheless offset the two amounts, one known and the other unknown, a decision that the District Court reversed because, *inter alia*, the District Court found that the Assignment did not grant Joyce Whitehead the right to enforce the Mobile Home Security Agreement against Holyfield. Having determined that Joyce Whitehead owes Holyfield unpaid rent of $8,400.00, the Court turns next to the issue regarding the ownership of the insurance proceeds.[23]

**B.    Insurance Proceeds**

Holyfield purchased casualty insurance on the Mobile Home in his name.[24]  In March 2012, during the term of that policy, the Mobile Home was destroyed by vandals.  The insurance company issued a check of $5,411.25 to Holyfield, and Holyfield's counsel, Thomas S. Shuler, currently holds the funds in his trust account pending the final disposition of the Adversary.

The Bankruptcy Court awarded the insurance proceeds to the Whiteheads based on a provision in the Mobile Home Security Agreement obligating the owner of the Mobile Home to purchase property damage insurance that names the lienholder as the loss payee and provides for payment directly to the lienholder in the event of loss or damage to the Mobile Home.[25]  (J.W. Ex. 4, ¶ 13).   The Bankruptcy Court concluded that because the tax sale was void as to

---

[23] The Remand Order did not instruct the Court to consider an award of attorney's fees for the collection of rent, and, therefore, no such award is granted.  *See United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002) (holding that a lower court on remand must comply with the dictates of the appellate court).

[24] The insurance policy was not submitted into evidence, but the parties do not dispute that Holyfield was the name insured.

[25] Holyfield challenged this argument on the ground he was never made a party to the Mobile Home Security Agreement and was never obligated to insure the Mobile Home for the benefit of the lienholder.

SouthTrust, the Whiteheads, by virtue of the Assignment of the Mobile Home Security Agreement, stepped into the shoes of the lienholder and acquired all of the rights of the lienholder, including the right to the insurance proceeds after the Mobile Home was destroyed by vandals (up to the amount of the lienholder's security interest).  On appeal, the District Court disagreed, holding that the Whiteheads never acquired an interest in the Mobile Home from the Assignment because the lien was extinguished by the conveyance of the tax deed or, in the alternative, by the settlement of their claims against Vanderbilt.  Accordingly, the District Court ruled that the Mobile Home Security Agreement provided no legal basis for awarding the insurance proceeds to the Whiteheads.  The District Court then instructed this Court to consider whether any other legal basis exists for the Whiteheads to claim a share of the insurance proceeds.  In that regard, the Court notes that even though the Whiteheads are not named as loss payees on the policy:  (1) they owned the Mobile Home until either 2005 (when the tax deed was conveyed to S&S) or 2010 (when the underlying debt on the Mobile Home was satisfied) and (2) Joyce Whitehead lived in the Mobile Home continuously from April 1997 until February 2009.

The Mississippi Supreme Court in *Sullivan v. Estate of Eason*, 558 So. 2d 830 (Miss. 1990), adopted the following three (3)-part test to determine whether insurance proceeds should be shared by someone other than the named insured:

> (1) whether the insurance was obtained for the sole benefit of the person who procured it; (2) whether by express or implied agreement the person who took out the insurance did so for the benefit of the owners of the other interest in the property; and (3) whether the owners of the other interests contributed to the costs of the insurance.

*Id.* at 834 (quoting another source).  In *Sullivan*, five (5) children had inherited their parents' home by intestate succession.  One of the children purchased a hazard insurance policy on the home for its full value.  After the home was destroyed by fire, the insurance company issued a

check payable to all five (5) children for the damage caused by the fire.  The testimony at trial suggested that the policy was purchased using some of the funds from one of the parents' estate and that representations had been made by the insuring child that the insurance coverage would be for the benefit of all the children.  After applying the three-(3) part test, the Mississippi Supreme Court affirmed the trial court's holding that the insurance proceeds should be distributed among all the children.

In this matter, the *Sullivan* factors weigh against awarding the insurance proceeds to the Whiteheads.  First, Holyfield testified that he obtained the insurance policy for his own benefit.  Second, there is no evidence in the record of any agreement between Holyfield and the Whiteheads regarding his procurement of insurance on the Mobile Home.  Indeed, the relationship between Holyfield and Joyce Whitehead was strained even before she signed the Rental Agreement and became even more so after her eviction by the Sheriff.  Moreover, Joyce Whitehead had not lived in the Mobile Home more than three (3) years before it was destroyed, making it unlikely she would bother to enter into such an agreement with Holyfield.  Finally, it is undisputed that Holyfield purchased the policy using his own funds, and the Whiteheads did not pay any of the cost of the premium.  Therefore, the Court concludes that the Whiteheads are not entitled to any part of the $5,411.25 in insurance proceeds.  This conclusion, however, does not necessarily mean that the insurance proceeds belong to Holyfield.

Under 11 U.S.C. § 541(a), "property of the estate" includes all legal or equitable interests of the debtor in property as of the commencement of his case.  In a chapter 13 case, property of the estate also includes property that is acquired after the commencement of the case but before the case is closed or dismissed.  11 U.S.C. § 1306(a).  In his bankruptcy schedules, Holyfield listed the Land as an asset of his estate but not the Mobile Home, and he denied owning an

interest in any insurance policies. (Bankr. Dkt. 1 at 9). He did not amend his bankruptcy schedules to disclose the Mobile Home or the property damage insurance policy at issue here. Generally, however, insurance policies are considered property of a bankruptcy estate "because, regardless of who the insured is, the debtor retains certain contract rights under the policy itself." *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 55 (5th Cir. 1993) (citing 11 U.S.C. § 541(a)). Insurance proceeds from such policies are also considered to be estate property depending on the type of insurance, the timing of the loss, and the terms of the policy. *Id.*

The proceeds at issue here were paid pursuant to a property damage insurance policy. Holyfield acquired an interest in them after the commencement of his chapter 13 case and the confirmation of his chapter 13 plan but before the dismissal of his case. 11 U.S.C. § 1306(a)(1). Thus, under 11 U.S.C. § 1306, the proceeds constituted property of his bankruptcy estate before the dismissal of his case.[26] When Holyfield's Bankruptcy Case was dismissed on September 28, 2012, however, the effect of the dismissal was to "revest[] property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title." 11 U.S.C. § 349(b)(3). Accordingly, because of the dismissal, the Court concludes that the insurance proceeds should be released to Holyfield.[27]

---

[26] Although the Bankruptcy Code provides that "the confirmation of a plan vests all of the property of the estate in the debtor," 11 U.S.C. § 1327(b), the Order Confirming the Debtor's Plan, Awarding a Fee to the Debtor's Attorney and Related Orders (Bankr. Dkt. 50) contains a contrary provision that states that "[a]ll property shall remain property of the estate and shall vest in the debtor only upon dismissal, discharge or conversion." *See* 11 U.S.C. § 1306(b)("Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate.").

[27] Whether the chapter 13 standing trustee may take action to administer the insurance proceeds as an asset of Holyfield's bankruptcy estate is an issue that is not before the Court. *See, e.g., In re Porter*, Case No. 13-02186-NPO (Bankr. S.D. Miss. Apr. 4, 2014), Dkt. 54.

**Conclusion**

In summary, the Court finds that Holyfield is entitled to a judgment declaring that he is the owner of the Land and Mobile Home and that the Mobile Home is not encumbered by a lien held by the Whiteheads.  Moreover, Holyfield is entitled to a monetary judgment against Joyce Whitehead awarding him unpaid rent of $8,400.00.  Finally, the insurance proceeds of $5,411.25 should be released to Holyfield.  A separate final judgment consistent with this opinion will be entered in accordance with Federal Rules of Bankruptcy Procedure 7054 and 9021.

##END OF OPINION##